MICHIGAN NATIONAL BANK OF DETROIT v MICHIGAN
LIVESTOCK EXCHANGE

Docket No. 92221. Submitted May 13, 1987, at Lansing. Decided
October 13, 1987. Leave to appeal granted, 430 Mich —.

In 1978, Michigan National Bank of Detroit loaned money to
William and Rosemary Christacopulos, taking a security inter-
est in "all livestock and increase" owned by the Christacopu-
loses. In 1981, the bank made another loan to a partnership in
which the Christacopuloses were partners, again taking a secu-
rity interest in "all livestock and increase" of the partnership.
The borrowers defaulted on the loans in January, 1982. The
borrowers thereafter disposed of forty-one head of the secured
livestock through Michigan Livestock Exchange, a commission
livestock seller. Michigan Livestock Exchange, without knowl-
edge of the bank's security interest, sold the livestock at
auction and turned the proceeds of the sale, less the sales
commission, over to the borrowers. Michigan National Bank of
Detroit brought an action for conversion against Michigan
Livestock Exchange in Tuscola Circuit Court. The trial court,
Patrick R. Joslyn, J., granted partial summary disposition in
favor of the bank, holding that the exchange was not a bailee
within the meaning of the documents of title article of the
Uniform Commercial Code and thus was not rendered immune
from liability for its innocent conversion of the livestock.
Michigan Livestock Exchange appeals by leave granted.

The Court of Appeals *held:*

1. Contrary to the holding of the trial court, the trucker's
receipts were documents of title, since, by usage of the trade,
those receipts are treated as adequately evidencing a commis-
sion seller's right to receive, hold, and dispose of the livestock.
Since the trucker's receipts are documents of title within the

REFERENCES

Am Jur 2d, Bailments §§ 96-99, 114-131.

Am Jur 2d, Commercial Code §§ 38-45, 49-51.

Construction and effect of UCC Art 7, dealing with warehouse
receipts, bills of lading, and other documents of title. 21 ALR3d
1339.

meaning of the Uniform Commercial Code, defendant was a bailee of the livestock within the meaning of the code.

2. The Uniform Commercial Code provides immunity from the tort of conversion where a bailee in good faith and in observance of reasonable commercial standards disposes of goods in accordance with the terms of a document of title. The nature of the wholesale livestock business makes it unreasonable to expect a commission livestock seller to check with all possible filing jurisdictions to ascertain whether a security agreement with respect to the livestock offered for sale has been filed. Accordingly, since defendant in good faith and in accordance with reasonable commercial standards sold the livestock supplied by the Christacopuloses, defendant is immune from liability for innocent conversion.

Reversed.

1. BAILMENTS — UNIFORM COMMERCIAL CODE — DOCUMENTS OF TITLE — LIVESTOCK SELLERS — TRUCKER RECEIPTS.

Trucker receipts issued by a commission livestock seller which are treated in the trade as evidencing the right of the commission livestock seller to receive, hold, and dispose of the livestock for which the receipt is given are documents of title within the meaning of that term as used in the Uniform Commercial Code; accordingly, a commission livestock seller which issues such trucker receipts is a bailee, within the meaning of the documents of title article of the Uniform Commercial Code, of the livestock evidenced by the trucker receipts (MCL 440.1201[15], 440.7102[1][a]; MSA 19.1201[15], 19.7102[1][a]).

2. BAILMENTS — UNIFORM COMMERCIAL CODE — SECURITY INTERESTS — COMMERCIALLY REASONABLE ACTIONS — LIVESTOCK SELLERS.

It is not commercially reasonable to expect a commission livestock seller to ascertain whether each head of livestock passing through its stockyards is subject to a security interest, since to require the seller to make a search for the filings of the documents representing such security interests would be so burdensome that the ability to conduct livestock auctions would be seriously impaired; a commission livestock seller who is a bailee of livestock for the purpose of sale and who in good faith and without actual notice of any security interest in the livestock sells the livestock is not liable for innocent conversion of such livestock even if there exists a properly filed security interest with respect to the sold livestock (MCL 440.7404; MSA 19.7404).

*David J. Vigna,* for plaintiff.

*Collison, Chasnis, Dogger & Grierson, P.C.* (by *John A. Chasnis* and *Joseph T. Collison*), for defendant.

Before: DANHOF, C.J., and MACKENZIE and J. P. SWALLOW,* JJ.

PER CURIAM. Defendant, Michigan Livestock Exchange, appeals by leave granted from an order granting partial summary disposition in favor of plaintiff, Michigan National Bank of Detroit. The Tuscola Circuit Court held that the exchange, which had auctioned off livestock in which the bank held a security interest, was liable to the bank for conversion. The circuit court reached this conclusion despite the fact that the exchange had no knowledge of the bank's security interest.

In June, 1978, the bank loaned money to William and Rosemary Christacopulos. As security for the loan, the bank took a security interest in "all livestock and increase" owned by the Christacopuloses. In August of 1981, the bank loaned money to Trojan Farms, a partnership between the Christacopuloses and Ronald Haarer. The loan was secured by "all livestock and increase of Trojan Farms."

In January of 1982, the borrowers defaulted on the loans. From January to August of 1982, the borrowers attempted to work out the default. However, during this period of time, the borrowers were disposing of certain of their livestock through the exchange. The borrowers received the proceeds, less commission, from the sale of forty-one head of dairy cows.

On January 24, 1983, the bank filed the instant suit against the exchange, seeking to recover the sale price of the cattle under a theory of conver-

* Circuit judge, sitting on the Court of Appeals by assignment.

sion. On April 28, 1986, the Tuscola Circuit Court entered an order of summary disposition in the bank's favor. The court found that MCL 440.7404; MSA 19.7404, the statute under which the exchange claimed it was immunized from liability for conversion, did not apply. The exchange appeals.

Section 7-704 of the Uniform Commercial Code, MCL 440.7404; MSA 19.7404, provides:

> A bailee who in good faith including observance of reasonable commercial standards has received goods and delivered or otherwise disposed of them according to the terms of the document of title or pursuant to this article is not liable therefor. This rule applies even though the person from whom he received the goods had no authority to procure the document or to dispose of the goods and even though the person to whom he delivered the goods had no authority to receive them.

The exchange asserts that it qualifies as a bailee and is entitled to the immunity offered by the above section. The circuit court found the exchange did not qualify as a bailee because the "trucker's receipts" pursuant to which the exchange held the livestock for sale did not qualify as documents of title under the Uniform Commercial Code. The court did not set forth on the record the basis for its conclusion that the trucker's receipts were not documents of title.

MCL 440.7102(1)(a); MSA 19.7102(1)(a) provides:

> "Bailee" means the person who by a warehouse receipt, bill of lading or other document of title acknowledges possession of goods and contracts to deliver them.

Thus, whether the exchange is a bailee for pur-

poses of the Uniform Commercial Code depends upon whether it held the goods pursuant to a document of title.

"Document of title" is defined at MCL 440.1201(15); MSA 19.1201(15):

> "Document of title" includes bill of lading, dock warrant, dock receipt, warehouse receipt, or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold, and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.

When livestock arrives at the stockyards, the exchange takes possession and issues a document which is known in the trade as a "trucker's receipt." The receipt identifies the owner's name, the trucker transporting the cattle to auction, the trucking charges, the livestock in question by tag number and type, and the weight of each animal. Once the livestock is sold, the purchase price, the buyer, and the commission price are indicated on the receipt.

The bank argues that trucker's receipts are not documents of title because they do not contain terms that "evidence the bailment and defendant's authority to sell and deliver the livestock."

MCL 440.1201(15); MSA 19.1201(15) does not require that a document of title contain the explicit terms of the contract to receive, hold, and dispose of the goods it covers. The statute only requires that "in the regular course of business . . . [the document] is *treated as* adequately evi-

dencing" the bailment contract. Official Comment 15 to § 1-201 of the Uniform Commercial Code explicitly states that the definition of document of title was "left open so that new types of documents may be included" and that "[t]he definition is stated in terms of the function of the documents with the intention that any document which gains commercial recognition as accomplishing the desired result shall be included within its scope." Moreover, the terms of the contract may be derived from a course of dealing between the parties or any usage of trade. MCL 444.1205(3); MSA 19.1205(3).

In the instant case, it is uncontroverted that the trucker's receipts are treated by the sellers, the exchange itself, and the purchasers "as adequately evidencing" the right of the exchange "to receive, hold, and dispose" of livestock. The trucker's receipt adequately fulfills the requirements of a document of title.

The bank also asserts that the exchange's argument erroneously implies that the bailee is to be the holder of the document. The bank contends that § 7404 contemplates that the ultimate recipient of the goods is to hold the document of title and surrender it to the bailee in exchange for the goods. The bank complains that there is no evidence in the record that the purchasers at auction held, and then surrendered, a document of title. Section 7404 contains no requirement that the eventual purchasers surrender the document of title in exchange for the goods. Moreover, such an interpretation would be inconsistent with § 1201(15), which expressly states that the document of title may be *issued by* a bailee. Nor are we aware of any situations in practice where the eventual purchasers hold a document of title prior to purchasing the goods covered by it.

We conclude that the circuit court erred in holding that trucker's receipts are not documents of title. Since the exchange held the livestock pursuant to a document of title, the exchange is entitled to the status of bailee.

However, bailee status is not the only requirement under § 7-404 which must be satisfied in order for a bailee to be immunized from liability. A bailee must also act "in good faith including observance of reasonable commercial standards." The exchange contends that its auctions met such standards. The circuit court held that the auctions were not held in a commercially reasonable manner because the exchange failed to check the appropriate filing offices to determine whether any of the livestock it sold was subject to perfected security interests.

The official comment to UCC § 7-404 states that it was meant to make explicit that the common law rule of "innocent conversion" is inapplicable to the operation of commercial bailees who perform their obligations in good faith and with reasonable observance of commercial standards.

The exchange receives the livestock it sells a short time before the auction. Federal law requires that the sellers be paid by the close of the next business day. 7 USC 228b. On the days in which the livestock involved in the instant case were sold, no fewer than 2,186 animals owned by 364 individuals were sold by the exchange. The exchange generally serves the livestock owners from thirty counties and three states. Thus, ascertaining for each auction date whether any head of livestock is subject to a security interest would require a search of the records of several counties at considerable cost and effort. The task is made even more difficult by the time restraints imposed by federal law. Even if the bank's financing state-

ment had been located, the exchange would have had some difficulty ascertaining whether the livestock it had received were subject to the security interest recited in the financing statement. We conclude that requiring commission merchants to ascertain whether each head of livestock passing through its stockyards is subject to a security interest would be so burdensome that the ability to conduct such businesses would be seriously impaired. Under the statutes in effect at the time,[1] we hold the exchange acted in accordance with reasonable commercial standards.[2]

The order of the circuit court is reversed. An order of summary disposition shall enter in defendant's favor.

---

[1] After the instant suit was filed, the Legislature amended MCL 440.9307; MSA 19.9307, establishing a procedure which requires secured parties to send notice of security interests in farm products directly to "potential buyers and points of delivery." Federal legislation has also been recently enacted to remedy the problem. Pub L 99-198, December 23, 1985, 7 USC § 1631(g).

[2] The parties have devoted a large portion of their briefs to *United States v Hext,* 444 F2d 804 (CA 5, 1971). In *Hext,* the Fifth Circuit found that a warehouseman and cotton broker were not liable for their innocent conversion as a result of their participation in the sale of cotton subject to a security interest. *Hext* was decided under UCC § 9-307. The only reference to UCC § 7-404 in *Hext* is at page 815, n 34.

Similarly, other cases relied upon by the parties do not involve an interpretation of UCC 7-404. *First National Bank of North Dakota v Pillsbury Co,* 801 F2d 1036 (CA 8, 1986); *United States v Progressive Farmers Marketing Agency,* 788 F2d 1327 (CA 8, 1986); *United States v Burnette-Carter Co,* 575 F2d 587 (CA 6, 1978); *United States v Sommerville,* 324 F2d 712 (CA 3, 1964); *First National Bank of Amarillo v Southwest Livestock, Inc,* 616 F Supp 1515 (D Kan, 1985); *Utah Farm Production Credit Ass'n v Hansen,* 738 P2d 642 (Utah App, 1987); *Christensen v Equity Cooperative Livestock Sale Ass'n,* 134 Wis 2d 300; 396 NW2d 762 (Wis App, 1986). The order of summary disposition in the bank's favor was entered solely on the basis of UCC § 7-704. For that reason and because we find that the exchange is entitled to the immunity afforded by that section, it is unnecessary to address issues involving UCC § 9-307 and other code provisions.