In re the MARRIAGE of Jeffrey W. RICHARDS and Mary E. Richards.

Upon the Petition of Jeffrey W. Richards, Petitioner–Appellee,

And Concerning Mary E. Richards, Respondent–Appellant.

No. 87–1784.

Court of Appeals of Iowa.

Feb. 23, 1989.

Steven H. Lytle of Erickson, Miller & Lytle, P.C., West Des Moines, for respondent-appellant.

Robert J. Kromminga, Des Moines, for petitioner-appellee.

Considered by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

DONIELSON, Presiding Judge.

Respondent appeals from certain provisions of the decree dissolving the parties' marriage. Respondent claims the district court erred in: 1) determining the amount of child support she should pay; 2) imposing a trust on a mutual fund to secure post-high school support; 3) setting post-high school support on a pro rata basis; and 4) making an award of property which was inequitable to her. Both parties ask for attorney fees for the appeal and costs.

Petitioner Jeffrey W. Richards and respondent Mary E. Richards were married on February 14, 1970. They have two children: Lisa Renee, born August 20, 1970; and David Jeffrey, born September 13, 1974. Mary is a nurse and earns about $27,000 per year. Jeffrey had been the president and general manager of Capital City Belting where his income for 1986 was $69,000. At the time of trial, however, Jeffrey was unemployed. The district court awarded joint legal custody of the

children to the parties and made Jeffrey responsible for their physical care. Mary was given liberal visitation rights and ordered to pay $250 per month per child in child support and $350 per month after the support obligation for the oldest child terminates. The court found that Jeffrey's earning potential was $35,000 to $40,000 per year.

Our scope of review is de novo. Iowa R.App.P. 4. The court gives weight to the fact findings of the trial court, especially when considering the credibility of the witnesses, but is not bound by them. Iowa R.App.P. 14(f)(7).

I. Respondent contends that the amount of child support she has been ordered to pay is excessive. She asserts it is inequitable to require her to pay a higher than average amount of support for her level of income in an effort to make up for the diminution of Jeffrey's income. Petitioner argues the support order is for the appropriate amount based on the non-custodial parent's ability to pay.

The relevant factors to be considered in determining the appropriate amount of child support in this case are:

1. The financial resources of both parents.

2. The standard of living the child would have enjoyed had there not been a dissolution.

3. The desirability that the party awarded either sole custody or in the case of joint custody, physical care remain in the home as a full-time parent.

4. The physical and emotional needs of the child.

5. The child's educational needs.

6. The tax consequences to each party.

7. Any other relevant factors.

Iowa Code § 598.21(4) (1987).

It is well established that parents have a legal obligation to support their children and that the obligation should be apportioned according to the ability of each parent to contribute. *In re Marriage of Bornstein*, 359 N.W.2d 500, 504 (Iowa App. 1984). The trial court found that respondent earned $1,635.85 per month after de-

ductions for taxes and insurance. Petitioner was unemployed at the time of the trial through no fault of his own. His earning capacity was estimated at $35,000 to $40,000 a year, and this figure has been used to figure petitioner's ability to pay.

The petitioner's estimated monthly expenses at the time of trial equaled $3,447.51 for maintaining the home and providing for the needs of the children. Once his employment benefits ran out, an additional $200 a month was required for dental and medical insurance for himself and the children.

■ Considering the financial resources of both parents, including their income and potential income from their assets, we find the amount of child support ordered to be equitable. Having respondent pay $500 a month now and $350 a month when only one child remains represents both parents' reasonable ability to pay for the support of their children. *See In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976).

II. Respondent challenges the imposition of a trust on the parties' AMCAP mutual fund to secure post-high school support for the two children. The fund is the result of the parties' accumulated savings and was valued at $22,437 at the date of trial. The trial court ordered the AMCAP fund set aside pursuant to Iowa Code section 598.21(1). The monies are to be used as the primary source for tuition, board and room, and books for the minor children's college education. Any remaining funds are to be divided when the youngest child reaches twenty-three years of age, obtains a bachelor's degree or its equivalent, or discontinues his post-high school education for a period of twelve consecutive months, whichever shall occur first.

Iowa Code section 598.21(1) (1987) provides for the disposition of property upon the dissolution of marriage. The court is authorized to "protect and promote the best interests of children of the parties by setting aside a portion of the property of the parties in a separate fund or conservatorship for the support, maintenance, education and general welfare of the minor children." *Id.* A trust fund is justified

when the record reflects an unwillingness or inability of either party to meet the legal obligation of support. *Neiderhiser v. Neiderhiser*, 254 Iowa 791, 803–04, 119 N.W.2d 245, 252–53 (1963). Without such a justification, no reason exists to create a trust. *In re Marriage of Bornstein*, 359 N.W.2d 500, 504 (Iowa App.1984).

■ Our examination of the record convinces us that a restriction on the fund is unnecessary in this case. Both parties testified that it has always been their intention to aid their children in obtaining a college education. At this time, both parents have adequate earning capacities to ensure payment of the costs of post-high school educations. Neither party has exhibited an unwillingness to pay college expenses. Therefore, we see no reason to restrict the use of this property.

Parents have a legal obligation to support their children. *In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976). However, the children are not entitled to share equally in the distribution of the property. There is no statutory authorization for such a distribution. The statutes only give the court discretion to set a fund aside to protect the children or to promote their best interests when the circumstances warrant such a disposition. Finding no justification in this case, we affirm the award of one-half of the AMCAP fund to each party, but modify the order by deleting the trial court's restriction that the AMCAP mutual fund be held jointly for use as a primary resource for the payment of post-high school education costs.

III. Respondent also disagrees with the trial court's order prorating the parties' share of education costs based on the parties' gross incomes. The trial court established that if the AMCAP mutual fund is insufficient to cover all the costs of the children's education, then the parties are to bear that percent of the remaining costs as that party's gross income for the preceding tax year bears in relationship to the gross income of the other party. Since we are eliminating the restriction on the AMCAP fund, we need to decide whether or not this pro rata requirement is equitable for all of the college expenses.

A court may order either of the parties to pay an amount in support of a child who is between the ages of eighteen and twenty-two years who is regularly attending an accredited school. Iowa Code § 598.1(2). The order may be made before the children reach eighteen or are accepted into an accredited school provided that the order is conditioned upon the children meeting the requirements of Iowa Code section 598.1(2). *In re Marriage of Vrban*, 293 N.W.2d 198, 203 (Iowa 1980).

■ An order regarding college expenses is particularly appropriate in this case where the eldest was seventeen years old at the time of trial. This order is not premature. *See In re Marriage of Rohlfsen*, 398 N.W.2d 197, 199 (Iowa App.1986) (order for college expenses found premature when it was made nine years before any of the children would be attending college). And the trial court's order was made conditional upon the requirements of Iowa Code section 598.1(2). Therefore, we find that the order is proper.

In regard to the amount of the award, respondent claims the approach is too simplistic and ignores certain important factors, like the difference in disposable incomes of the parties and the relative needs of the parties. She also argues that the formula fails to take into consideration her continuing obligation to support the youngest while the other child is in college.

■ A college education is valuable and desirable for children evincing an aptitude therefor. Iowa Code section 598.1(2) authorizes the court, in its discretion, to award support of children through college *under the proper circumstances*. Among the factors to be considered are the financial condition of the parent, ability of the child for college work, age of the child, and whether the child is self-sustaining or not. *In re Marriage of Vrban*, 293 N.W.2d at 202. Once it is determined that support for college is justified, it is equitable for *both parents* to furnish financial assistance for higher education in such an amount as their financial condition will permit. *In re*

*Marriage of Byall,* 353 N.W.2d 103, 108 (Iowa App.1984).

Both parents here are of limited financial means. The children are at or near college age. Under these circumstances, it is appropriate that we consider our holding in *In re Marriage of Lieberman,* 426 N.W.2d 683, 686 (Iowa App.1988).

> When parties are of limited financial means there is no need to obligate parents for college expenses beyond those of attending a state-supported university in the state of the student's residence.... There are no factors in this record to support a finding [this child] needs to attend school in another state.

■ Considering the current overall economic circumstances of the parties in this case, we do feel an equitable distribution of the financial burden of college is achieved through the pro rata formula. However, we cannot give the children an open-ended ticket for college expenses. Therefore, we modify the district court's order by limiting the total obligation of both parents combined to the cost of attending a state-supported university in the state of the student's residence. The total cost to the parents shall be figured after subtracting any loans or scholarships the children obtain.

■ The college support obligation will apply in the event either or both children choose to continue their education after high school as defined in Iowa Code section 598.1(2), with the parties bearing that percentage of the costs for tuition, board and room, and books as that party's gross income for the preceding tax year bears in relationship to the adjusted gross income of the other party. In the event that one or both children choose a local school and remain in the family home, the respondent's support obligation for that child shall remain in full force and effect and shall constitute the respondent's fair share for board and room.

IV. Respondent claims the division of property is grossly inequitable to her. She complains that she has been awarded only 37.5% of the property. She argues that the award is inequitable both as to total dollar value and from the viewpoint of liquidity.

Respondent also claims seven specific errors made by the trial court in arriving at this distribution.

We examine the entire record and determine the parties' rights anew based upon all credible evidence on properly presented and preserved issues. *In re Marriage of Full,* 255 N.W.2d 153, 156 (Iowa 1977). Our analysis of the property division is governed by Iowa Code section 598.21(1). The ultimate question is whether the distribution is equitable under the specific facts of the particular case. *In re Marriage of Callenius,* 309 N.W.2d 510, 514 (Iowa 1981). No rule requires that equality be achieved with mathematical exactness. *In re Marriage of Conley,* 284 N.W.2d 220, 223 (Iowa 1979). All economic aspects of the divorce decree must be viewed as an integrated whole when considering the equity of the distribution. *In re Marriage of McFarland,* 239 N.W.2d 175, 179 (Iowa 1976).

Respondent's position is that the trial court, through a series of erroneous findings, conclusions and rulings, arrived at the grossly-inequitable distribution. The first error alleged is the improper admission of evidence and consideration of fault. Over objections, the trial court admitted evidence of an extra-marital relationship by respondent. This she claims was used to prejudice the court against her.

■ We agree that evidence of fault must be rejected when considering the issues of breakdown of marriage, property division, and support under Iowa Code Chapter 598 on dissolutions. *In re Marriage of Peterson,* 227 N.W.2d 139, 142 (Iowa 1975). The evidence in question was admitted for a limited purpose. There has been no proof of prejudice from its admission. Furthermore, in our de novo review, this court does not give any consideration to evidence pertaining to the conduct of the parties. *In re Marriage of Carney,* 206 N.W.2d 107, 111 (Iowa 1973). Therefore, we find if any error was made, it was harmless.

■ Second, respondent claims improper consideration of Jeffrey's temporary un-

employment. The court is authorized to consider "other economic circumstances of each party," and "other factors the court may determine to be relevant in an individual case." Iowa Code § 598.21(1)(i) and (m). Consideration of temporary unemployment in this case is justified where it is but one of many factors used to determine an equitable distribution. Petitioner's unemployment is especially relevant in this case because he has been awarded custody of the children.

■ The third error alleged is an improper finding regarding respondent's contributions to support of the children. In determining who should get the stocks and cash proceeds from the sale of the QSA stock and petitioner's liquidated vacation pay, the court considered the fact that respondent has been absent from the family home for eighteen months and had not made any meaningful support payments toward the family obligations or needs of the children. The court did note that respondent had paid for gifts and other costs related to her exercise of visitation.

Any obligations undertaken prior to the separation of the parties are considered part of a joint effort benefiting both parties. Whatever amount is owing at the time of separation is to be divided equally between the parties and each party is to assume his or her half of the remaining indebtedness. *In re Marriage of Smith,* 351 N.W.2d 541, 543 (Iowa App.1984). Since respondent was not contributing towards the obligations incurred prior to their separation, this was a proper consideration. Furthermore, whether or not petitioner requested child support does not change respondent's legal obligation to support her children. *See In re Marriage of Hoak,* 364 N.W.2d 185, 189 (Iowa 1985). Respondent's absence of meaningful support for eighteen months is a relevant factor in this case.

■ Erroneous valuation of the mink coat is the fourth alleged error. The coat was a gift from Jeffrey. The purchase price was $5,200 in December of 1985. It was insured for its appraised value of $6,800. The fur was damaged while it was being stored during the winter after its purchase. Respondent was awarded the coat and the claim for the damages together valued at $5,200.

The trier of fact is at liberty to accept or reject evidence as to the value of the mink coat. *See Schantz v. Schantz,* 163 N.W.2d 398, 404 (Iowa 1968). The trial court determined that $5,200 was a reasonable and fair value for the coat and claim for damages. Our examination of the record fails to disclose any reason for us to disagree with this finding.

Respondent's fifth claim is improper crediting of Jeffrey's inheritance and improper enhancement thereof. In 1977, Jeffrey received $9,100 inheritance as a result of his father's death. The money was placed in the parties' savings accounts or certificates of deposit until used for the down payment on the family home in the spring of 1982.

"The court shall divide all property, except inherited property or gifts received by one party, equitably between the parties...." Iowa Code § 598.21(1). It is not an absolute requirement that property received through inheritance be set aside; rather, the court must weigh the relevant factors to determine how the property should be treated. *In re Marriage of Vrban,* 359 N.W.2d 420, 427 (Iowa 1984).

Among these factors are:

(1) contributions of the parties toward the property, its care, preservation or improvement;

(2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;

(3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;

(4) any special needs of either party;

(5) any other matter which would render it plainly unfair for a spouse or child to have the property set aside for the exclusive enjoyment of the devisee.

*Id.*

■ We find adequate support to set aside petitioner's inherited funds in the

amount they were valued at prior to investing in the house. The trial court credited petitioner the amount of $14,000 against the equity of the family home before dividing the remaining equity between Jeffrey and Mary. Both parties testified that the inherited funds were used as a down payment. No conditions exist which make it inequitable to respondent to separate out the value of the inheritance prior to it being used to purchase the home.

The $14,000 figure was arrived at through testimony regarding the value of the inheritance at the time the house was purchased. Respondent argues that she is entitled to share in the enhanced value due to interest earned by the CD's and bank accounts. She cites the length of the marriage, her efforts to preserve the family funds, and the fact that she was co-maker of the mortgage on the house.

When deciding whether to divide appreciation on inherited property, we must determine whether the appreciation which occurred during the marriage was fortuitous or due to the efforts of the parties. *In re Marriage of Lattig,* 318 N.W.2d 811, 815 (Iowa App.1982). An equitable distribution of the appreciated value should be a function of tangible contributions and not the mere existence of the marital relationship. *Id.*

It is equitable to allow petitioner Jeffrey credit for the $14,000 as the increase in value was not due to tangible efforts by either party. It is important to distinguish the appreciation in the funds prior to the purchase of the home from any increase in value due to the investment in the home. Respondent contributed towards the increase in value of the home and she has been awarded her one-half of the remaining equity for this. Furthermore, while segregating each error, we cannot lose sight of the overall economic provisions of the decree. *In re Marriage of McFarland,* 239 N.W.2d 175, 179 (Iowa 1976). It was not inequitable to credit petitioner for his inheritance and its increase in value due to interest earned.

Respondent also claims the trial court improperly determined the equity val-ue of the homestead. Besides subtracting the amount of Jeffrey's inheritance, the trial court used the value of the mortgage as of the date of separation instead of the trial date. Also, the court subtracted a seven percent commission based on the fair market value of the residence before dividing the equity between the two parties. Respondent cites no authority for her position.

Regarding the appropriate amount of equity, any loans obtained prior to the separation of the parties are considered part of the joint efforts benefiting both parties. *In re Marriage of Smith,* 351 N.W.2d 541, 543 (Iowa App.1984). Any amount left owing at the time of separation is to be divided equally between the parties with each party assuming his or her half of the indebtedness. *Id.* Since respondent left home without making any contributions to the house payments, the trial court was correct in using the equity value as of the date of their separation.

The cost of selling the home is also an obligation incurred by both of the parties. Subtracting the seven percent fee at the time of trial results in a net equity figure that more accurately reflects the dollar value of the asset being divided. We do not find that the trial court acted improperly determining the equity value of the homestead.

Lastly, respondent contends the trial court erred with respect to the lien on the real estate. Mary challenges the duration of the lien and the lack of interest on it. She cites no authority for her position. The trial court established that the respondent is entitled to payment of her lien within ninety days from the day that the youngest child graduates from high school, becomes nineteen years of age, marries, becomes self-supporting, or the house is sold, whichever shall first occur. However, in the event the youngest child continues to reside at home while attending post-high school educational institutions, then the right to enforce the lien shall be stayed for so long as the child remains in the home as his primary residence and qualifies for sup-

port as provided in Iowa Code section 598.-1(2).

■ The duration of the lien is reasonable in that it furthers the intent of both parties that the children be able to reside in the family home. Considering the overall economic situation of the parties, the length of the lien is equitable and in the best interests of the children. Also, reviewing the overall property division, we conclude the property division is equitable although Mary will receive no interest on her lien. *See In re Marriage of Pittman,* 346 N.W.2d 33, 37 (Iowa 1984).

Our review of the evidence reveals the trial court made an equitable distribution of the property to the parties. Respondent actually has received greater than forty-five percent of the marital property. This division is equitable considering the contributions of each party to the marriage, petitioner's custodial responsibilities for the children, the desirability of maintaining the family home for the children, and petitioner's unemployment at the time of trial. Furthermore, by lifting the restriction on the AMCAP mutual fund, respondent's liquidity situation has been greatly enhanced. Therefore, we find the property distribution to be equitable.

V. Both parties have applied for an award of attorney fees and costs on appeal. The parties were ordered to pay their own attorney fees for the district court proceedings. An award of attorney fees on appeal may be granted depending upon the parties' respective abilities to pay. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). Considering the financial situations of both parties, we deny both requests and order that the parties be responsible for payment of their own attorney fees and costs.

In conclusion, the decree of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.

The Supreme Court's order of September 15, 1988, 431 Mich 867, is vacated, and the application is held in abeyance pending the decision in *People v. Beckley*, 430 Mich. 858, 420 N.W.2d 827, No. 81583, which is pending on appeal before this Court. Court of Appeals No. 80191.

KEY NUMBER SYSTEM

Supreme Court of Michigan.

Argued Nov. 2, 1988.

Decided May 1, 1989.

Bank brought action for conversion against livestock exchange which had auctioned off livestock in which bank held security interest. The Tuscola Circuit Court, Patrick R. Joslyn, J., granted partial summary judgment in favor of bank, and appeal was taken. The Court of Appeals, 165 Mich.App. 243, 418 N.W.2d 663, reversed. Upon grant of leave to appeal, the Supreme