# IN THE COURT OF APPEALS OF IOWA

No. 14-0088
Filed January 14, 2015

**IN RE THE MARRIAGE OF JACK LYNN LUKOWICZ**
**AND LYNN EDNA LUKOWICZ**

**Upon the Petition of**
**JACK LYNN LUKOWICZ,**
　　　　Petitioner-Appellee,

**And Concerning**
**LYNN EDNA LUKOWICZ,**
　　　　Respondent-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Gary E. Wenell, Judge.

Lynn Lukowicz appeals the property valuation and equalization payment provisions of the dissolution decree. **AFFIRMED.**

Edward J. Keane of Gildemeister & Keane, L.L.P., Sioux City, for appellant.

R. Scott Rhinehart of Rhinehart Law, P.C., Sioux City, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

Lynn Lukowicz[1] appeals the district court's valuation of real estate and the amount of the equalization payment ordered in the decree dissolving her marriage to Jack Lukowicz. Although the district court's orders did not divide the marital property equally, the distribution was equitable considering Jack's ill health and his greater contributions to the marital estate. Accordingly, we affirm the district court's orders. We decline to award appellate attorney fees.

## I. Background facts and proceedings

Lynn and Jack have been twice married to each other. Their first marriage lasted from 1983 until 1987. They remarried in May 1989. Jack filed a petition to dissolve the second marriage on December 2, 2011. They have no children in common, but both have children from earlier marriages. Both are sixty-four years old, but Jack is in significantly poorer health. He is unable to work, suffers from cancer and heart disease, and receives social security disability payments. Lynn works about thirty hours a week at a dry cleaner, but the district court considered her to be "underemployed." The parties stipulated neither party would pay alimony to the other. They also agreed Jack should be awarded the family residence and surrounding land, but did not agree on the property's value.

That property is the sticking point in the dissolution proceedings. Jack originally purchased the house on contract for $7500 with his first wife, Colleen, in 1980. Jack had not fulfilled the contract at the time of his first divorce from Lynn. The decree in his first divorce from Lynn in 1987 awarded the house to

---

[1] After the filing of the decree, she has been legally known as Lynn Nice.

Jack. One month after Jack and Lynn remarried they received the deed to the home, having paid off the balance of the contract. The property did not stay unencumbered for long; in July 1989 Jack and Lynn took out a $6020 mortgage on the house. They satisfied that mortgage three years later. The home now is unencumbered. In 1992, the parties purchased an adjoining twelve acres of land bordering Stone State Park, which is located in the Loess Hills.

At the dissolution trial, the parties differed in their valuations of the home and surrounding land. Lynn valued the home at $95,000 and the surrounding land at $15,000. Lynn testified she settled on those amounts after speaking with a realtor and reviewing the price of comparable properties. Jack valued the home at $74,400, which is its county assessed value. He valued the adjacent property at $9900. Jack testified he wanted to keep the land in the family and preserve the real estate for both his children and Lynn's daughter.

On September 7, 2013, the district court dissolved the marriage. The court assigned a value to the property at a figure lower than the estimates provided by either party. The court stated:

> The advisability of selling the property as well as other factors, some economic and some not, causes this Court to find that a cash award to the respondent is appropriate. A sale for the taxable value less an amount for bringing the septic sewer and water facilities up to code less commissions and other sale expenses are not likely to generate in excess of $65,000.

The court awarded Lynn an equalization payment of $15,500, finding that amount represented "a just and equitable share of property accumulated through their joint efforts." The court explained that given the duration of the marriage, it would "ordinarily divide the parties' marital property approximately 50/50." But in

this case, the court determined other applicable factors tended to "diminish [Lynn's] portion or percentage of the marital assets, which are primarily the residence, surrounding lots, and insurance cash value."[2] The court focused on the parties' relative contributions to the joint estate, finding "some credible evidence that [Lynn's] income was not all placed in the marital pot, but that she maintained some separate accounts and made some substantial purchases on her own." The court also emphasized the difference in the parties' earning capacities, finding Jack had "no earning capacity" whereas Lynn was "a healthy person with many years' experience in the house cleaning business."[3] The court noted Jack would not be able to "make periodic payments on any property award."

Lynn filed a motion to enlarge or amend the district court findings. In the motion, she argued the court improperly determined the value of the home, failed to account for the value of the surrounding land, and failed in the distribution to recognize her contributions to the marriage.

In ruling on the motion to enlarge, the court explained that it found the assessed value of the house offered by Jack to be more reliable than the realtor estimates offered by Lynn. The court wrote:

> The uncontroverted evidence herein placed the assessed value at $74,400. The county assessor's office deals with sales

---

[2] The parties' pretrial stipulation listed Jack's life insurance policy as having a cash value of $16,058.

[3] The district court used the term "lucrative" to describe Lynn's potential business prospects. This description was not supported by evidence in the record. While the district court did try to explain the word choice in its ruling on the motion to enlarge, we consider only evidence offered by the parties in the record when deciding the equity of the decree.

transactions that occur every day and this Court, accordingly, finds his opinion to have greater weight than the parties. . . .  However, the evidence also showed that the well system limited the use of water and, furthermore, for the property to be saleable, a new well and septic system would be required at a cost of $5,000 to $8,000.  Finally, as the Court noted in its opinion, if the property was sold, real estate commissions and other sales expense would also be deducted.  This Court's order never determined the value of the parties' real estate to be $65,000 as [Lynn] alleges.  It simply stated . . . that if the property was sold for the taxable value, it would not likely generate in excess of $65,000.

The court also addressed the value of the additional lots:

Whether the assessed value included only lots 21 and 22 or also lots 14 through 20 was unknown.  However, there is no credible evidence a part or all of lots 14 through 20 added to the market value of lots 21 and 22.  Although additional rough timber property may appeal to an owner and have assessed value, whether it enhances the sale value to a willing buyer is unknown.  Other issues about the marketability of this property (3/4 mile lane) caused this fact finder to believe the property may have a limited number of potential buyers and, accordingly, the Court believes that in absence of additional evidence, its previous valuation to be supported by the evidence.

The court reasoned that Jack brought the value of the residence to their second marriage, while Lynn "is shown to have brought nothing."  The court expressed skepticism about the credibility of Lynn's testimony that she significantly contributed to the improvement of the property.  The court again emphasized Lynn's earnings during the marriage "never went into any joint accounts, as she kept them apart and separate."  The court also returned to the relative health situations of the parties, finding that Jack's dire medical conditions made his testimony more believable.  Ultimately, the court slightly increased the amount of Jack's equalization payment owed to Lynn to $17,500.  Lynn now appeals.

**II.     Standard of Review**

In this equity action involving the dissolution of a marriage, we engage in de novo review. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Our review involves examining the entire record and adjudicating anew the issue of the property distribution. *Id.* We give weight to the district court's factual findings, though they are not binding on us. *Id.* We defer to the district court's opinion regarding the believability of the parties because of the trial judge's superior ability to gauge their demeanor. *In re Marriage of Pundt*, 547 N.W.2d 243, 245 (Iowa Ct. App. 1996).

As the fact finder, the district court is at liberty to reject or accept evidence relating to value. *In re Marriage of Richards*, 439 N.W.2d 876, 881 (Iowa Ct. App. 1989). We will not disturb its valuation of an asset so long as the value falls within the range of permissible evidence. *In re Marriage of Gensley*, 777 N.W.2d 705, 720 (Iowa Ct. App. 2009).

**III.    Analysis of property valuation and distribution**

**A. Valuation**

Lynn first contends the district court erred in assigning $65,000 as the value of the real estate, including the residence and surrounding lots, when even Jack asserted the fair market value of all the property together was $84,300. Lynn seizes on the court's comment that a sale of the property was "not likely to generate in excess of $65,000." But the record does not show the court actually valued the property at $65,000. In the order on the motion to enlarge, the court embraced the assessed value of $74,400 for the parties' residential lot. The

court found the assessor's opinion to be reliable. The court then discussed the fact the property likely could not be sold without significant expenditures for a new well and septic system. The court relied on testimony placing the cost of a new sewer system at $5000 to $8000.[4] The court also found no credible evidence in the record that the additional lots added market value to the overall property holding.

We defer to the district court when its valuations are accompanied by supporting credibility findings or corroborating evidence. *In re Marriage of Decker*, 666 N.W.2d 175, 180–81 (Iowa Ct. App. 2003). In this case, we find the court's adoption of the property's assessed value and the court's caveats about necessary water and sewer updates both fell within the permissible range of evidence.

## B. Distribution

Iowa courts strive to divide marital property equitably between divorcing spouses based on the factors set out in Iowa Code section 598.21(5) (2011). But an equitable division is not necessarily an equal division. *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). The factors relevant to this case include the length of the marriage; the property brought into the marriage; the contribution of each party to the marriage, giving appropriate economic value to

---

[4] We generally do not consider closing costs or other expenses associated with selling a house unless the house going to be sold. *See In re Marriage of Friedman*, 466 N.W.2d 689, 691 (Iowa 1991) (rejecting reduction of value of assets due to tax consequences of sale because there was "no evidence that a sale was pending or even contemplated"); *In re Marriage of Shields*, No. 06-1686, 2007 WL 2710951, at *2 (Iowa Ct. App. Sept. 19, 2007) (holding district court properly declined to consider real estate commission and closing costs when husband expressed no intent to sell marital residence).

each party's contribution and homemaking; the earning capacity of each party; and other economic circumstances of each party. *See* Iowa Code § 598.21(5).

Jack and Lynn have been married twice. Their most recent marriage lasted twenty-four years. The district court acknowledged normally following a marriage of that length, an equal property division would be the fair result. It is true that "substantially equal property awards are generally appropriate in marriages of long duration*." In re Marriage of Siglin*, 555 N.W.2d 846, 849 (Iowa Ct. App. 1996). But "[w]hat constitutes a just and equitable award depends on the particular circumstances of each case, after consideration of all the recognized criteria." *Id.* In this case, the district court—after assessing the relative credibility of both parties—found the other factors in section 598.21(5) to be more compelling. In doing so, the district court achieved substantial equity between the parties.

Jack originally entered the contract to purchase the residential property during his marriage to his first wife. He was awarded the property during his first divorce from Lynn. Accordingly, Jack brought that property into the second marriage to Lynn. *See In re Marriage of Parks*, 630 N.E.2d 509, 513 (Ill. Ct. App. 1994) (executed and completed property settlement is not affected by parties' remarriage to each other). By comparison, the district court determined Lynn "brought nothing" of value into the second marriage. Property brought into the marriage by each party is a factor for the court to consider when crafting an equitable distribution of property at the end of the marriage. *In re Marriage of*

*Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). The district court was justified in giving significant weight to that factor here.

In addition, the district court assessed the economic value of each party's contribution to the marriage. The court found Lynn contributed to the aesthetic value of the property, but did little to improve its market value. The court also determined Jack placed most of his income into joint accounts, while Lynn deposited her individual earnings into separate accounts and did not spend her money on home improvements. While on a few occasions Lynn participated in house projects, the record reflects Jack did most of the work on the home himself, including the plumbing, electrical, and carpentry work. We defer to the court's credibility findings on these points.

On appeal, Lynn asserts the district court undervalued her efforts at caring for the parties' children from their previous marriages and her general role in the maintenance and upkeep of the home. While the record supports Lynn's homemaking contributions, we do not believe that fact must alter the district court's distribution scheme.

The most significant factors in the district court's distribution analysis were the parties' relative earning capacities and their health situations at this point in their lives. Both Jack and Lynn were sixty-four years old at the time of the dissolution proceedings. The district court found Jack had no earning capacity given his ill health and inability to work. He survived on his social security disability income of $1474.50 per month. In contrast, Lynn was healthy and capable of continuing to support herself. Lynn worked twenty to twenty-five

hours per week at a dry cleaner. She previously worked at a house cleaning business. The district court concluded Lynn was currently under-employed.

The district court voiced the practical concern that Jack could not afford to "make periodic payments on any property award." Our court has said: "The ability of a party to meet the financial obligations imposed by a dissolution decree is a relevant factor to consider in determining an equitable division of property." *Siglin*, 555 N.W.2d at 849–850. Accordingly, we find no reason to modify the decree.

## IV. Appellate attorney fees

Both parties request appellate attorney fees. An award of attorney fees is not a matter of right and rests within our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We determine whether an award is appropriate considering the needs of the party seeking the award, the other party's ability to pay, and whether the appeal required a party to defend the district court's decision. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We find both parties are responsible for their own attorney fees. Costs are divided equally.

**AFFIRMED.**