**IN THE COURT OF APPEALS OF IOWA**

No. 14-0858
Filed February 25, 2015

**IN RE THE MARRIAGE OF ELYSE SCHNITZLER**
**AND JOHN P. SCHNITZLER**

**Upon the Petition of**
**ELYSE SCHNITZLER,**
        Petitioner-Appellant,

**And Concerning**
**JOHN P. SCHNITZLER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Winneshiek County, Richard D.

Stochl, Judge.


        Elyse Schnitzler appeals the district court's grant of joint physical care and

the property valuation in the decree dissolving her marriage. **AFFIRMED.**


        James J. Burns of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C.,

Decorah, for appellant.

        Erik W. Fern of Putnam Law Office, Decorah, for appellee.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

Elyse Schnitzler challenges two provisions of the decree dissolving her marriage to John (Pete) Schnitzler. First, she believes joint physical care of their two children is unworkable given the level of conflict in the parties' relationship. Second, she contests the district court's acceptance of Pete's property valuations and contends she is entitled to a greater equalization payment.

On the first issue, while we are concerned by the hostility between the parties, we defer to the district court's credibility assessments and determination they will be able to "set aside their differences in the best interests of the children." On the second issue, we find the court's valuation of Pete's business assets to be within the permissible range of evidence. Accordingly, we affirm.

I.    **Background Facts and Proceedings**

Elyse and Pete married in 2005, separated in 2013, and divorced in 2014. They both live in Decorah, have extended families nearby, and intend to stay in that community. The first issue on appeal involves the physical care of their two children. At the time of trial, their daughter E.S. was seven, and their son T.S. was five. From her first marriage, Elyse has another daughter, B.M., who was twelve, and who enjoyed a close relationship with her half-siblings and Pete.

During Pete's separation from Elyse, he developed a friendship with her first husband, Mike Miculinich. Pete previously had a negative attitude toward Mike, but claimed his opinion was largely influenced by Elyse. Pete called Mike

to testify on his behalf at the dissolution trial.[1]  Mike testified he admired Pete's parenting skills and was supportive of Pete's relationship with B.M.  Mike also testified he is able to communicate with Elyse about visitation exchanges through text messaging.

Both Elyse and Pete work outside the home and did so during their marriage.  At various times, each parent was required to work long hours, and the other would then take over the care of the children.  Elyse is a nurse at Winneshiek County Medical Center.  She works part-time and earns $28,569 per year.  Pete is a self-employed electrician and plumber.  While his annual income was just $15,080 in the year before the divorce, for the purposes of the decree the district court imputed income to Pete equal to Elyse's income.  The value of his tools and equipment for the business were a source of dispute at the dissolution trial.

Another point of disagreement was the significance to be attached to several incidents of aggression perpetrated by Pete during the marriage and separation.  Elyse testified that during the marriage Pete had pushed her, thrown things, and punched the wall.  During their separation, the confrontations increased between Pete and Elyse.  Elyse testified when she was trying to move out of the house, Pete took her car keys and kept her from leaving until she called a family member.  On another occasion, she came by the marital home to pick up sandals for T.S. and as she left, Pete hurled a metal cake dome at the

---

[1] When asked on cross-examination if he and Mike talked about "ways of handling Elyse in court," Pete acknowledged: "It maybe gets brought up once in a while, but for the most part it's a situation that both of us kind of agree just to put behind us and move forward."

car's windshield. Elyse also related an incident where Pete pulled his truck alongside her car, forcing her to pull over to the curb and talk with him.

The most troublesome event occurred on August 7, 2013, when the children were spending time with Pete in the marital home. As agreed, Elyse stopped by the house to see them, and she and Pete started to yell at one another. The argument ended when Pete slammed the door closed on Elyse's head, causing her a concussion and a black eye. E.S. and T.S. were in the house during their parents' fight.

Pete referred to the August 7 confrontation as "a horrible incident" that he regretted. But he further explained he felt "trapped" and was trying to go into the house when she followed him and "was forcing her way in through the door." He admitted pushing on the door, but said he only did so with his left hand because he had recently dislocated his right shoulder. According to Pete, "At some time Elyse got caught in the door, got the bruise on her forehead." He testified his intent was to "deescalate things, get a barrier between us and let things cool off."

Both Elyse and Pete called the police on August 7 to report the incident. The police arrested Pete for domestic abuse assault. In addition to the no-contact order entered in the criminal case, Elyse obtained a civil domestic abuse protective order under Iowa Code chapter 236 (2013). She testified she did so because she was frightened of Pete and was not sure of the duration of the criminal order. In October 2013, the Winneshiek County Attorney offered to defer the prosecution against Pete if he completed anger management and community service. Pete had satisfied those requirements by the time of the dissolution trial.

In its dissolution ruling, the district court characterized the August 7 incident as "unfortunate" but stated it was "by no means a matter that should play a factor in custody of the minor children." The court found Pete's anger control problems during the marriage—while not to be condoned—did not rise to the level of "a history of domestic violence." The court awarded the parties joint legal custody, and over Elyse's objection, joint physical care. The court ordered the parties to prepare and submit a joint physical care parenting plan.

In the property division of the decree, the district court assigned values to the marital property—including the tools and equipment Pete used in his business—based on the opinion of Pete's expert. Pete received net assets of $64,091 and Elyse received net assets totaling $28,114. Accordingly, the court ordered Pete to make an equalization payment of $17,988 to Elyse.

Elyse now appeals.

## II. Standard of Review

We review dissolution of marriage cases do novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We give weight to the district court's factual findings, but are not bound by them. Iowa R. App. P. 6.904(3)(g). When it comes to the credibility of witnesses, "[t]here is good reason for us to pay very close attention to the trial court's assessment." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). The trial judge "is greatly helped in making a wise decision about the parties by listening to them and watching them in person." *In re Marriage of Callahan*, 214 N.W.2d 133, 136 (Iowa 1974). On appeal, we must

rely on the transcript and necessarily forfeit the impressions created by the parties' demeanors. *Vrban*, 359 N.W.2d at 423.

### III. Analysis

#### A. Joint Physical Care

The district court decided awarding Elyse and Pete joint physical care was in the best interests of their two children. The court wrote:

> Both parents love their children and are bonded to them. While they have difficulty communicating at the present time, the court believes that much of that is fueled by this litigation. The court believes these parties are capable of setting aside their differences for the benefit of the children and maturely exercise joint custody . . . [and shared physical care].

Elyse does not contest the award of joint legal custody, but contends the factors identified by our supreme court in *In re Marriage of Hansen*, 733 N.W.2d 683 (Iowa 2007), weigh against joint physical care.

We start our analysis with the legislative directive that custody decisions need to assure children of divorce the "maximum continuing physical and emotional contact with both parents" insofar as is reasonable and in the child's best interests. Iowa Code § 598.41(1)(a). The legislature set out factors for courts to consider when determining the optimal care arrangement. *See* Iowa Code § 598.41(3). We also look to the non-exclusive factors articulated in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (including the needs of the children, the characteristics of the parents, the relationship between each child and each parent, and the stability and wholesomeness of the proposed environment). In this case, the children have warm relationships with both parents and both households offer them a stable and wholesome environment.

When considering the propriety of joint physical care, we turn to *Hansen*, where the court discussed in detail the relative pros and cons of shared care arrangements. As a core principle, the court opined: "Physical care issues are not to be resolved based upon perceived fairness to the *spouses,* but primarily upon what is best for the *child[ren]*." *Hansen*, 733 N.W.2d at 695. The *Hansen* court rejected the notion one spouse could exercise "absolute veto power" over whether the district court awarded joint physical care. *Id.* at 699. But the court also warned: "[T]he lack of mutual acceptance can be an indicator of instability in the relationship that may impair the successful exercise of joint physical care." *Id.*

To assess the viability of a shared care arrangement, the *Hansen* court zeroed in on four factors: (1) the stability and continuity of care-giving, (2) the ability of the parents to communicate and show mutual respect, (3) the degree of conflict between the parents, and (4) the degree to which the parents generally agree about their approach to daily child-rearing matters. *Id.* While we find this a close case, we conclude the consideration of these factors supports joint physical care.

In this case, both parents have participated in the physical care of the children during the marriage. Both Pete and Elyse have been employed outside the home, and both have taken on the main childcare duties when the other was required to work long hours. The stability and continuity of care giving will be well served by a joint physical care arrangement.

Elyse argues the second and third factors should have foreclosed the court's award of joint physical care. She contends the evidence showed she and Pete did not communicate well and experienced a high degree of conflict both before and after their separation. The district court, after having an opportunity to observe the parties in person, believed Elyse's concerns were overblown and the parties were mature enough to avoid flare-ups in their relationship. We accept the district court's credibility findings and its faith that the parties' hostilities, which have been magnified by the adversarial nature of the dissolution litigation, will not interfere with their joint-parenting duties. The record shows the parents, for the most part, have been able to communicate effectively through text messaging and email. Based on the district court's first-hand observations, we likewise expect both parents to be responsive to reasonable inquiries from the other as they continue to use these means of communication to facilitate the joint physical care arrangement.

As for the fourth *Hansen* factor, it does not appear from the record the parents differ significantly on their approach to daily child rearing matters. As the bitterness from the dissolution proceedings subsides, we are hopeful they will "generally be operating from the same page on a wide variety of routine matters." *See Hansen*, 733 N.W.2d at 699.

Finally, Elyse argues joint physical care will have the effect of splitting E.S. and T.S. from their half-sister B.M. Pete counters he is open to having B.M. spend as much time with E.S. and T.S. as possible, and the record shows Pete

and B.M.'s father have already cooperated in arranging joint outings for the half-siblings.

Iowa law presumes it is not in children's best long-term interests to deprive them of "the benefit of constant association" with their siblings. *See In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992). But the presumption may be overcome by good and compelling reasons. *In re Marriage of Pundt*, 547 N.W.2d 243, 245 (Iowa Ct. App. 1996). The same principles govern awards of physical care when half siblings are involved. *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986).

In this case, the district court offered sound reasons why joint physical care was in the best interests of E.S. and T.S., despite the collateral consequence that they would be spending less time with older sister B.M. We also note the parents have the opportunity to blunt the impact of the joint-care arrangement on B.M. when preparing and executing their parenting plan.

### B. Property Distribution

In her second assignment of error, Elyse argues the district court reached an inequitable division of the marital property by accepting the asset valuations proffered by Pete on all disputed items. As the fact finder, the district court is at liberty to reject or accept evidence relating to value. *In re Marriage of Richards*, 439 N.W.2d 876, 881 (Iowa Ct. App. 1989). We will not disturb its valuation of an asset so long as the value falls within the range of permissible evidence. *In re Marriage of Gensley*, 777 N.W.2d 705, 720 (Iowa Ct. App. 2009).

The primary point of contention was the value of the tools and equipment Pete used in his plumbing and electrical business. Both parties offered the expert opinions of local owners of plumbing and heating businesses. Pete offered the testimony of William Darrell Lee, who inspected Pete's entire inventory and assigned a total value of $19,685.[2] Elyse offered the testimony of James Grinna, who had less access to Pete's inventory and estimated the value of the tools and equipment at $35,000. The district court found Grinna's estimate to be unreliable.

We defer to the district court when its valuations are accompanied by supporting credibility findings or corroborating evidence. *In re Marriage of Decker*, 666 N.W.2d 175, 180–81 (Iowa Ct. App. 2003). In this case, the district court explained it was skeptical of Grinna's estimate because he did not provide a full itemization of the tools used in Pete's business. This explanation was reasonable and supports our deference to the court's valuations. We conclude the value placed on Pete's assets was well within the permissible range of evidence. *See In re Marriage of Versluis*, 521 N.W.2d 760, 761 (Iowa Ct. App. 1994). We decline to disturb the property distribution.

---

[2] On appeal Elyse notes the district court considered Lee's opinion over her objection to the timeliness of his report, but she does not raise admissibility as a separate issue. Consequently, we do not address the question of the timely designation of the parties' expert witnesses. *See Midwest Auto. III, L.L.C. v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (holding random mention of an issue without elaboration or supporting authority fails to preserve the claim for appellate review).

### C.  Appellate Attorney Fees

Pete asks for $3000 toward his appellate representation.  An award of attorney fees is not a matter of right; it rests within our discretion.  *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).  We decide if an award is appropriate by considering the needs of the party seeking fees, the other party's ability to pay, and whether the appeal required a party to defend the decree.  *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).  Because neither Pete nor Elyse clearly holds a superior financial position, we find both parties are responsible for their own attorney fees.  Costs are divided equally.

**AFFIRMED.**