In re the MARRIAGE OF Jackie BARE
and Marianne Bare.

Upon the Petition of Jackie BARE,
Appellant,

and Concerning Marianne BARE, Appellee.

No. 55540.

Supreme Court of Iowa.

Jan. 17, 1973.

Rehearing Denied March 22, 1973.

Raymond E. Pogge, Council Bluffs, for appellant.

Peters, Campbell & Pearson, Council Bluffs, for appellee.

Heard before, MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

This dissolution proceeding poses still another case in which we must reluctantly adjudicate the custody of a child victim of self-centered parental conduct. We do so with the sure knowledge any result reached cannot be as satisfactory as the situation which would have existed had the child's interest, over the years, been central in the minds and hearts of the parents.

The petitioner (husband) and respondent (wife) were married January 1, 1956. The only child of this marriage, John Dorsey Bare, is now 16 years of age. At the time of this marriage respondent furnished most of the household furniture. They lived in a Council Bluffs home acquired through the cooperation of respondent's step-father. In 1962 it was disposed of by profitless sale.

Throughout the marriage petitioner has worked as a railroad laborer. During much of the marriage respondent conducted a Council Bluffs dance studio and had other occasional related employment. Although none of this apparently generated much income, it did often take her away from home at night. Despite some conflict in the evidence, we conclude her work efforts contributed little to the family living expenses or to the acquisition of family assets.

In 1961 petitioner received an inheritance from his father's estate and used $9000 of it as down payment on a 36 acre tract near Council Bluffs. Thereafter and until the parties separated in 1970 they lived on this homestead. Petitioner rented other land and worked long, hard hours both at his railroad employment and in farming. These efforts apparently increased his net worth at the expense of

meaningful companionship and rapport with his son. Respondent, evidently unhappy in a farm wife role, exacerbated this problem by intervening in petitioner's efforts to engender work discipline in the boy through chore duties.

There is abundant undenied testimony in the record to establish that respondent, at least in the final stages of this marriage, committed flagrant sexual indiscretions with several men. There is further uncontroverted evidence of her drinking and, after these parties separated, her inability to control John, who left the farm to stay with her in Council Bluffs. John stayed out late, skipped school, received failing grades and consorted with bad companions.

To her credit, when John was about to encounter serious trouble, respondent in September 1971 placed this boy in Wentworth Military Academy, Lexington, Missouri. In so doing, she used $1300 of a $2000 inheritance for his initial tuition and apparently has financially arranged for the $2900 annual tuition in the intervening time.

John's enthusiasm for Wentworth, and its value to him academically and morally, was plainly evident in his trial testimony. He testified he wanted to remain at Wentworth. He verified his estrangement from his father and his desire that his mother be awarded his custody. We sense this could be motivated in part by fear his father would cause him to be withdrawn from Wentworth. Justification for this misgiving may well have been motivated by petitioner's testimony, "I am not willing to make any contribution toward the cost of that schooling because they got just as good schools in Council Bluffs."

No serious question is raised concerning petitioner's character and his farm home as those considerations relate to a custody award. His intrinsic honesty is not enhanced in the eyes of this court by his deliberate and admitted fabrication under oath concerning the location of a bank account. We are similarly unimpressed by his failure to farm even the 36 acres in

1971 solely because he did not want to "* * * give half of it to [his] wife." Although he had recently encountered a lay-off from his railroad employment, he had not attempted to find other employment. He had "no plans for the future as to [his] occupation." From the time John left the farm to live with his mother in October 1970, until trial in November 1971, the record is silent as to any meaningful contact between petitioner and his son. Petitioner testified:

"My son was in town a year and a half and never called me and would run like a rabbit when I would try and see him."

Trial court dissolved the marriage. Custody of John was awarded respondent with reasonable visitation rights for petitioner. Petitioner was ordered to pay $200 per month child support so long as John attended the academy, and if he ceased to be a student there, $100 per month until he attained age 18 or became self-supporting. Respondent was awarded the household goods and furnishings and $7500 as "alimony and property settlement." Petitioner was awarded the 36 acre farm, valued by the court at $18,000, subject to a lien for the alimony and property settlement award; a savings account of $4423; U.S. savings bonds in the amount of $1000; a 1967 GMC pickup valued at $1000; farm equipment valued at $1000; and balance due on a sales contract (inherited from his father) in the sum of $4000. Respondent was awarded partial attorney fees of $500, and costs.

Appealing, petitioner assigns three propositions relied on for reversal: Trial court erred in (1) awarding custody of John to the respondent, (2) over-valuing the farm and finding $2500 was paid on the farm out of respondent's personal injury settlement, and (3) making an excessive award for alimony and property settlement.

I. Most important, of course, is the matter of child custody.

The best interest of the child must be our first and governing considera-

tion. Rule 344(f)(15), Rules of Civil Procedure. We do not make a determination of custody to reward one of the parents or to punish the other. In re Marriage of Forest, 201 N.W.2d 728 (Iowa 1972); Spotts v. Spotts, 197 N.W.2d 370 (Iowa 1972).

■ Following enactment of the marriage dissolution act (chapter 598, The Code) the majority of this court in In re Marriage of Williams, 199 N.W.2d 339, 345 (Iowa 1972) held,

> "[N]ot only the 'guilty party' concept must be eliminated but evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor in awarding property settlement or an allowance of alimony or support money."

We do hold, however, that conduct of the parties, good and bad, is admissible in evidence as it bears on and reflects the character and fitness of the respective parties for custody of children.

Application of this rule creates no enthusiasm for respondent as custodian of the child. On the other hand, petitioner's conduct after this proceeding commenced and at trial is not beyond reproach. Had an attorney been appointed to represent the child's interest as authorized in § 598.12, The Code, a proper record might have been made for placing custody in a third person, perhaps a near relative.

■ John is now 16 and at trial expressed the wish that his custody be granted to respondent. His wishes, while not controlling, should be recognized and properly weighed. Jones v. Jones, 175 N.W.2d 389 (Iowa 1970); Halstead v. Halstead, 259 Iowa 526, 144 N.W.2d 861 (1966).

■ Pragmatically, we cannot ignore the fact John has had no contact with his father for over two years. They have no rapport or communication, a most unfortunate circumstance. The repair of that breakdown could well consume the balance of John's minority. Neither may we ignore the reality that respondent, whatever her other shortcomings, has continued to make it possible for John to attend the academy, where counsel on both sides agree he should stay. It is undisputed Wentworth is molding a potential delinquent into a good and valuable citizen. We perceive this situation has the best opportunity to continue if custody remains in respondent, who is determined John shall remain in that resident learning environment. If the circumstance of his attending this academy should change, a petition for modification would permit reconsideration of the custody issue.

II. We next turn to the valuation of the 36 acre farm, which issue assumes a limited importance only as it relates to the property settlement. This tract was purchased in November 1961, for $13,000. Petitioner put in all new fences, built a machine shed, installed a water system and substantially improved the house interior through his own labor and the expenditure of $1000. Each party, by stipulation, filed two appraisals, which ranged from $15,000 to $25,000.

■ For the purposes of the property settlement, trial court fixed the value of this real estate at $18,000. This conformed more to petitioner's appraisals than to respondent's. The valuation found by trial court was well within the permissible range of the evidence and we are not inclined to disturb it. See Schantz v. Schantz, 163 N.W.2d 398 (Iowa 1968); Riemenschneider v. Riemenschneider, 239 Iowa 617, 30 N.W.2d 769, supplemented, 32 N.W.2d 68 (1948).

■ In the same proposition relied on for reversal petitioner contends trial court erroneously found respondent had made a $2500 farm payment out of the proceeds of a personal injury settlement. This issue also bears only on the amount of alimony and property settlement awarded below. Where, as here, the credibility of witnesses

is a consideration in an equity case we give weight to the fact findings of the trial court although we are not bound by them. Rule 344(f)(7), R.C.P.

■ Petitioner denied the $2500 payment was made out of his wife's funds, but was unsure of the payment source. He did not personally make the payment. His ambivalent testimony, contrasted with the positive testimony of respondent that she did personally make the payment with her funds, leaves us no reason to disagree with trial court's finding on this point.

■ III. Petitioner's third proposition relates to the claimed excessiveness of the alimony and property award to respondent. Under *Williams,* supra, it is not only impermissible to consider the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse, but we also must reject such evidence in awarding alimony and property settlement.

We may, however, consider those other criteria laid down in Schantz v. Schantz, supra. We have carefully examined the evidence in this case in light of the remaining *Schantz* criteria. Some relevant facts have already been indicated in our preliminary discussion of this case. Other facts are particularly noteworthy.

■ It is true petitioner's hard labor played a large part in the accumulation of these assets. His exact inheritance was in an unspecified amount, but $9000 of it is traced into the farm payment. Similarly, a real estate contract with a balance of $4000 goes back to the same source and was awarded to him. A checking account was divided $910 to respondent and $980 to petitioner before the dissolution.

Respondent contributed $1300 of her inheritance for John's benefit at a critical time in his life. Of course, both parents are responsible for his welfare. She also advanced $2500 from her own funds toward the purchase price of the homestead. She is now steadily employed although her earnings are modest. There is no evidence that either party is in ill health.

Petitioner and respondent were married for more than 15 years. Apparently a number of those years were not unhappy for either party. We hold trial court's award in this respect was not unfair to petitioner.

■ IV. Respondent's counsel has made application for attorney fees in the total amount of $1616.44 for services and travel expense in connection with this appeal. Services are itemized and the total charge is, we believe, fair and reasonable. However, under the circumstances here and particularly in view of the record regarding petitioner's present unemployment, we hold he should pay only $800 of this amount. Costs on appeal are also taxed to petitioner. Judgment shall be entered in trial court for such additional sums.

The matter is therefore affirmed as modified and remanded with directions.