**In re MARRIAGE OF Mary Kersten ESTLUND and Timothy Alan Estlund.**

**Upon the Petition of Mary Kersten Estlund, Petitioner/Appellee/Cross-Appellant,**

**And Concerning Timothy Alan Estlund, Respondent/Appellant/Cross-Appellee**

No. 83–161.

Court of Appeals of Iowa.

Nov. 30, 1983.

Stephen B. Jackson, Cedar Rapids, for respondent/appellant/cross-appellee.

Scott E. McLeod of Lynch, Dallas, Smith & Harman, Cedar Rapids, for petitioner/appellee/cross-appellant.

Heard by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Respondent appeals and petitioner cross-appeals from the custodial and economic provisions of the parties' dissolution decree. Respondent contends: (1) the trial court should have awarded him physical custody in the joint custody scheme agreed to by the parties; (2) the trial court should have required petitioner to maintain a life insurance policy for the benefit of the parties' children; and (3) the division of the parties' marital assets and liabilities was inequitable. In her cross-appeal, petitioner

asserts that: (1) the alimony and attorney fee awards were inadequate; and (2) the court should have ordered respondent to pay an existing real estate debt, in the event that the parties' house in Osage, Iowa, did not sell or the proceeds of a sale were inadequate to pay the debt. Petitioner also requests attorney fees on this appeal. We affirm.

I. *Scope of Review.* In this equity action, our review is **de novo**. *In re Marriage of Novak*, 220 N.W.2d 592, 597 (Iowa 1974). We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). In so doing, we give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

II. *Custody of Children.* We are faced with making a determination from the record of which parent will have primary physical custody of the children. It is apparent from the record that both parents would be good custodians of the children, and that both of them have cared for the needs of the children in their daily lives. The trial court found that "[p]etitioner was the parent primarily responsible for the rearing of the children." Respondent disputes this finding, and claims that the trial court's findings in support of its award of primary custody to petitioner: (1) are contrary to the overwhelming weight of the evidence; (2) are contrary to the undisputed evidence; (3) are based upon improper judicial notice of the "rigors and responsibilities of an industrious attorney;" (4) ignored opinions expressed by third-party witnesses; and (5) ignored the fact that much of petitioner's testimony was impeached, while respondent's testimony stood unimpeached.

The record reveals that both petitioner and respondent are conscientious parents. Respondent certainly demonstrates a keen parental interest in his children. Respondent's actions regarding the children indicates more than average attention to their needs. The record shows, however, that petitioner, until she became employed full-time, was primarily responsible for the rearing of the children. While there is undisputed evidence that the respondent ministered to the children a great deal when he was free to do so, it is no less true that petitioner exercised the primary parenting role during respondent's absences at work and in other activities. When petitioner returned to full-time work, she and respondent more nearly shared the responsibilities of providing for the children's daily needs. The record does not show, nor does respondent actually claim, that his caring for the needs of the children replaced petitioner as the parent more responsible for their nurture. These children are fortunate in having two able and caring parents.

From our review of the record, we cannot agree with respondent that the trial court's findings were contrary to the overwhelming weight of the evidence or that its findings were contrary to the undisputed evidence. Neither do we believe the trial court's findings were based upon the court's having taken improper judicial notice of the "rigors and responsibilities of an industrious attorney." The finding that respondent was an industrious attorney finds ample evidentiary support in the record. There is undisputed evidence that the respondent, in addition to working full days, some nights, and Saturday mornings, also participated in bar association activities and maintained a busy schedule. The court was justified in finding that respondent, while willing to revise his work schedule to minister to the needs of the children, would likely have a more difficult time in spending time with the children than would petitioner. Petitioner's work schedule will coincide with the children's school schedule, holiday schedule, and vacation schedule. The likelihood of night work for petitioner is remote. She has demonstrated an ability to supervise and care for the children effectively and responsibly. She, as well as respondent, appears to be stable and reliable as a parent.

Respondent, in his brief, insists that the trial court ignored the undisputed evidence of petitioner's extra-marital affair in finding that "[it] is over and that it did not materially reflect upon or adversely affect the children in any detrimental way." Moral misconduct is a circumstance to be given serious consideration in determining a parent's fitness to have custody of minor children, but it is not the *only* consideration. *In re Marriage of Dawson*, 214 N.W.2d 131, 132 (Iowa 1974). Each case must be decided on its own peculiar facts. *Id.* The issue of custody is ultimately decided by determining under the whole record which parent can minister more effectively to the long-range best interests of the children. *In re Marriage of Bowen*, 219 N.W.2d 683, 687–88 (Iowa 1974).

On the whole record, and considering the criteria found in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), we approve the joint custody arrangement the parties have agreed upon and which has been incorporated in the decree, and we believe the long-range best interests of the children will be better served by awarding primary physical custody to petitioner. We give weight to the trial court's findings in this regard, and affirm the award of custody made by the trial court. *See In re Marriage of McDowell*, 244 N.W.2d 238, 239 (Iowa 1976).

III. *Life Insurance.* Respondent urged the trial court to require that petitioner maintain a $50,000 term life insurance policy on her own life for the benefit of the children. The trial court ordered petitioner to name the parties' minor children as primary beneficiaries on any life insurance provided her through her employment. At the time of trial, such a policy with a death benefit of $30,000 was provided by her employment. In addition, the court ordered petitioner to continue to maintain the partially employer-financed health, dental, and prescription coverage for the children available to petitioner through her present or subsequent employers. The trial court, however, made no requirement that petitioner maintain the $50,000 policy. In view of the rather precarious financial position petitioner will be in for the foreseeable future, although she may voluntarily wish to maintain such policy, such continuation will not be required.

IV. *Division of Assets and Liabilities.* The trial court made findings of values of assets and amounts of liabilities, based on values and amounts agreed upon by the parties. The distribution of the property of the parties should be that which is equitable under the circumstances after consideration of the criteria codified in Iowa Code section 598.21(1). The contributions of petitioner toward respondent's law degree, both as a homemaker and in her working to provide support, may be taken into consideration upon the issue of an equitable division of property. *In re Marriage of Horstmann*, 263 N.W.2d 885, 891 (Iowa 1978).

In its allocation of assets and liabilities, the trial court awarded the family home to petitioner, subject to the existing indebtedness. The Osage, Iowa, house was awarded to the parties jointly, with the intention that such property is to be sold, or that efforts to sell it should continue. The decree provides that the net proceeds, if any, shall first be used to pay off the $9,313.33 debt to Mr. Frank Olson, plus any accrued interest. It is obvious that if the Osage house does not sell, or if it sells but does not produce sufficient proceeds to pay the debt to Olson, each of the parties is to pay one-half of the remaining debt. To the extent that there is any question concerning that debt, we hold that each party is liable for one-half of the Olson debt under the trial court's decree.

Under all the circumstances, we believe the trial court's division of property is fair and equitable. Although petitioner was awarded many of the parties' personal assets, none of the assets awarded are income producing. On the other hand, respondent was awarded the only income-producing asset held by the parties. Furthermore, that asset, the acquisition of which

was contributed to substantially by petitioner, will enable respondent to earn substantially more than petitioner will earn from her employment as a teacher. Considering all the applicable criteria, we hold that the trial court's division of property was equitable.

V. *Petitioner's Cross-Appeal.* Petitioner has cross-appealed from the dissolution decree, claiming: (1) the awards of alimony and attorney's fees were inadequate; and (2) the trial court should have ordered respondent to pay any remaining indebtedness on the debt owed to Mr. Frank Olson, following the sale of the Osage, Iowa, house. Petitioner also asks that she be awarded attorney fees on this appeal. We note that we have disposed of petitioner's issue number two in part IV of our decision above.

■■■■ A. *Alimony.* The trial court awarded alimony to the petitioner in the amount of $50 per month beginning March 1, 1983, and ending February 1, 1985. The criteria for granting alimony are codified in Iowa Code section 598.21(3). The trial court obviously considered as important in this case the criteria in sections 598.21(3)(e) and (f). Alimony and property rights may be closely related, but they are distinguishable and have differing purposes. *In re Marriage of Hitchcock,* 309 N.W.2d 432, 437 (Iowa 1981). When determining the appropriateness of alimony, the trial court must consider (1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against relative needs of the other. *Id.* at 436–37.

■■■■ On our **de novo** review, considering the relative income of the parties, the indebtedness of each, and all other factors (*see* Iowa Code section 598.21(3)), we believe the alimony award was proper, both as to amount and duration.

■■■■ B. *Attorney Fees.* Petitioner believes that respondent should be ordered to pay at least $5,000 of her attorney's fees. The charges to the date of the decree, February 9, 1983, were apparently based upon 110.44 hours at $75 per hour,

for a total fee of $8,283. The trial court awarded petitioner attorney's fees of $2,000. Attorney's fees are not recoverable in a dissolution as a matter of right, but rest within the court's discretion and depend upon one spouse's financial needs and the other spouse's ability to satisfy them. *Locke v. Locke,* 263 N.W.2d 694, 696 (Iowa 1978).

There is no doubt that this cause was thoroughly prepared and tried on both sides. The distribution of property, however, resulted in respondent being awarded assets of lesser value than those awarded to petitioner. Considering respondent's obligations under the decree, his income and petitioner's ability to pay, we believe the trial court's award of $2,000 for attorney's fees to petitioner was proper and should be affirmed.

C. *Attorney's Fees on Appeal.* Petitioner makes claim for attorney's fees on appeal. Such fees are based upon 93.26 hours at $75 per hour, plus out-of-pocket expenses of $357.51. Undoubtedly many hours were expended resisting the application for stay order filed by respondent, which was denied. Total attorney's fees requested by the petitioner, including both trial and appellate proceedings, are $15,600. Respondent already has been ordered to pay $2,000. Presumably, respondent has a substantial obligation for fees to his own attorneys.

■■■■ We have reviewed the attorney's itemized fees and, without commenting upon the amount of fees petitioner should pay, we determine only what portion thereof should be paid by respondent. *See In re Marriage of Horstmann,* 263 N.W.2d at 892. Petitioner shall be allowed the sum of $1,500 toward her attorney fees in connection with this appeal. Judgment shall be entered in the trial court for the amount allowed in this court.

AFFIRMED.