**In re the MARRIAGE OF Judith Ann PAXSON and Thomas Edward Paxson.**

**Upon the Petition of Judith Ann Paxson, Appellee,**

**And Concerning Thomas Edward Paxson, Appellant.**

**No. 91–631.**

Court of Appeals of Iowa.

Aug. 27, 1992.

Stuart D. Nielsen of Nielsen & Nielsen, P.C., Corning, for appellant.

Verd R. Bailey and Richard H. Davidson of Bailey Law Office, P.C., Clarinda, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

Thomas and Judith Paxson were married on June 25, 1967. The district court dissolved the marriage on April 8, 1991. The parties had two children, Janet and Cheriann. Janet was killed in an automobile accident in 1988. Cheriann, who was born April 15, 1972, is currently nineteen years of age and therefore not subject to a custody order.

During the marriage, the parties were involved in the operation of a salvage yard and a tavern. These businesses were known as Southwest Iowa Salvage and the Mainstreet Tap in Bedford, Iowa. These businesses were operated in a partnership arrangement with Harold Eugene Beavers.

In 1982, Tom and Beavers formed a partnership to purchase and operate a salvage business. Tom basically operated the salvage business. Beavers' help was minimal after the first year of operation. Judith helped out with this salvage business by answering phones and running errands.

The salvage business was operated as a partnership between Tom and Beavers from 1982 until 1988. In 1988, Tom and Judith divested themselves of most of their assets due to the potential liability they faced from an automobile accident in which their daughter was killed. They gave approximately $13,000 to Judith's father. They also executed a quitclaim deed transferring the real estate involved in the salvage business to Beavers. The salvage business ceased to operate in 1990.

In 1989, Tom and Beavers entered into another business relationship to purchase a tavern, the Mainstreet Tap. A large portion of the money used to buy the tavern came from the money transferred to Judith's father. The tavern was opened for business under the new partnership arrangement on September 1, 1989. According to Tom, he manages the bar and makes all of the decisions. Judith helped to remodel the tavern and did bookkeeping for about eleven months but did not receive a salary.

Presently, Tom draws a salary of $100 per week for managing the tavern; however, he has occasionally drawn more than $400 within a month. In addition to the $100 per week salary, Tom is entitled to live in the trailer on the property of the now defunct Southwest Iowa Salvage company. Tom also has possession and use of a Harley Davidson motorcycle which was purchased by Beavers.

Judith has had a congenital heart problem which was surgically corrected when

she was a teenager. During the marriage, Judith was able to work in her trained profession as a medical technician. However, her heart condition began to worsen during the marriage. Since 1972, Judith has received social security disability income for her heart condition. At the time of the dissolution hearing in March 1991, Judith received $497.90 in disability benefits. Also during the marriage, Judith earned money baby-sitting to help support the parties' two daughters. Judith testified that she is currently disabled and unable to be employed and support herself.

A dissolution hearing was held on March 14, 1991. The dissolution decree required Thomas to pay child support in the amount of $249 per month and alimony in the amount of $250 per month. The district court concluded that Thomas is healthy and is "capable of earning far in excess of what he is earning or, at least, reporting as income." The court found that "Judith is disabled and unable to be employed and her expenses far exceed her level of income."

The district court did not make a determination of ownership of Southwest Iowa Salvage or the Mainstreet Tap because Harold Beavers is not a party to this litigation. However, the district court ordered that Thomas and Judith were each entitled to a one-half interest in whatever ownership is established in Southwest Iowa Salvage or the Mainstreet Tap.

■ Thomas appeals from the dissolution decree, contending that the $250 per month in alimony awarded by the district court is excessive in light of his ability to pay and in comparison to other alimony awards. He contends that the district court exaggerated his earning capacity and asks that the alimony award be reduced or eliminated entirely.

Judith counters that the district court's alimony award of $250 is not excessive and should be affirmed. Specifically, she contends that the record indicates that Tom actually earns and is capable of earning more than $100 per week and that a significant portion of his living expenses are paid by his tavern business. In addition, Judith argues that her earning capacity is zero as a consequence of her disability.

In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ When determining the appropriateness of alimony, the court must consider (1) the earning capacity of each party, and (2) their present standards of living and ability to pay balanced against their relative needs. *In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa App.1983). Alimony is an allowance to the ex-spouse in lieu of a legal obligation to support that person. *See In re Marriage of Hitchcock*, 309 N.W.2d 432 (Iowa 1981).

Judith has no earning capacity due to her disability. While Tom earns less than Judith receives in disability benefits, a significant portion of Tom's living expenses are paid by his business. Judith, on the other hand, must pay her own living expenses, including medical and pharmacy bills. On this basis, we affirm.

AFFIRMED.