IN re the MARRIAGE OF Dixie
Marie VAN RYSWYK and
Wilbur Van Ryswyk,

Upon the Petition of Dixie Marie Van
Ryswyk, Petitioner–Appellee/Cross–
Appellant,

And Concerning Wilbur Van Ryswyk,
Respondent–Appellant/Cross–
Appellee.

No. 91–1262.

Court of Appeals of Iowa.

Sept. 29, 1992.

Bert A. Bandstra, Knoxville, for respondent-appellant/cross-appellee.

Gerald B. Feuerhelm, Des Moines, for petitioner-appellee/cross-appellant.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

HABHAB, Judge.

## FACTS

Wilbur and Dixie Van Ryswyk were married on September 9, 1972. Three children were born to the parties during the marriage: Scott, born February 26, 1973; Sidney, born January 16, 1976; and Shawn, born August 30, 1979. Scott has reached the age of majority.

At the time of trial, Wilbur and Dixie were both forty years old. Both have high school educations. Wilbur also took a tractor repair course after high school. Dixie is in good health. Wilbur suffers from diabetes and hypertension for which he takes daily medication.

Since 1974, Wilbur has been employed by Vermeers Manufacturing. He is a territorial sales manager. He is guaranteed a draw of $22,000 a year and is paid 3.5 percent commission on the machinery he sells. The commission commences only after the $22,000 has been earned in commissions. Wilbur's income was approximately $164,000 in 1989, and he earned just under $150,000 in 1990. Wilbur's position requires him to travel extensively and work long hours.

During the marriage, Dixie only worked outside of the home for short periods of time. She cared for the home and was the primary caretaker of the children. At the

time of trial, Dixie was working as a receptionist, three days a week, at Red Rock Rubber for $5.50 per hour.

Prior to the separation, the parties had approximately $88,000 in a savings account. Wilbur used $55,000 of the savings to buy Dixie a house in New Sharon, Iowa. Wilbur retained the original family home and shop in Taintor, Iowa. The parties agreed the value of Dixie's house was roughly equivalent to the house retained by Wilbur. The parties used $20,000 of the savings account to purchase a van for Dixie. The balance of the savings account was left to pay monthly bills, such as food, heating, electricity, and telephone.

Dixie filed a petition for dissolution of marriage on June 6, 1990. On July 16, 1991, the district court entered its dissolution decree.

The district court agreed with Wilbur's proposed property distribution. As a result, Wilbur received assets valued at approximately $93,458 and Dixie received assets valued at approximately $85,600. In addition, the district court ordered Wilbur to pay Dixie a $10,000 cash settlement to offset his cash and retirement account.

The district court ordered Wilbur to pay $1,500 per month in child support which will continue as long as the criteria of Iowa Code section 598.1(2) exist. It ordered Wilbur to pay Dixie $500 per month in alimony. Alimony will increase to $750 when child support is payable for only one child and to $1,000 when child support is no longer payable. The court determined the alimony would cease if Dixie remarries or cohabits with someone. It concluded each party should pay his or her own attorney fees because the assets were divided equally and there were no liabilities. Wilbur appeals and Dixie cross-appeals. We affirm as modified.

## SCOPE OF REVIEW

Our review in cases such as these is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

## ANALYSIS

I. *Alimony and Property Distribution.*

Wilbur argues the $10,000 cash settlement and award of alimony were inequitable. Dixie cross-appeals and argues the property settlement is unfair and the alimony award is inadequate. We disagree with the contentions of both parties except for the slight modification hereafter set forth.

■ We consider property division and alimony together in evaluating their individual sufficiency. *In re Marriage of Dahl*, 418 N.W.2d 358, 359 (Iowa App. 1987); *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984).

■ Wilbur received assets valued at approximately $93,458 and Dixie received assets valued at approximately $85,600. To compensate for the discrepancy in assets, the district court ordered Wilbur to pay Dixie a $10,000 cash settlement. We find the value placed on the assets by the trial court to be well within the permissible range of evidence and will not disturb them on appeal. *See In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973); *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984). We find the distribution of property and the cash settlement ordered by the district court to be equitable under the circumstances.

■ When determining the appropriateness of alimony, the court must consider "(1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against relative needs of

the other." *In re Marriage of Estlund,* 344 N.W.2d 276, 281 (Iowa App.1983) (citation omitted). Alimony is an allowance to the former spouse in lieu of a legal obligation to support that person. *See In re Marriage of Hitchcock,* 309 N.W.2d 432, 437 (Iowa 1981).

■ The district court ordered Wilbur to pay Dixie $500 per month in alimony in addition to $1,500 per month in child support. However, it stated that when child support is payable for only one child, alimony will increase to $750 per month, and when no child support is payable, alimony will increase to $1,000 per month. We find the district court's award of alimony to be equitable under the circumstances.

After considering the district court's distribution of property and award of alimony, we find they are sufficient and equitable under the circumstances. However, we modify the award of alimony in one respect. The trial court determined that alimony would cease if Dixie remarries or cohabits with someone. We modify this provision by adding to it that alimony will also cease upon the death of either party. Except as we have modified under this heading, we affirm the trial court.

II. *Child Support.*

Dixie argues the child support award is inadequate. Wilbur argues the award of continuing child support pursuant to Iowa Code section 598.1(2) is premature and unrelated to the potential educational needs of the children.

■ It is well established that parents have a legal obligation to support their children. *In re Marriage of Fleener,* 247 N.W.2d 219, 221 (Iowa 1976). The obligation to support should be apportioned according to the ability of each parent to contribute. *In re Marriage of Bornstein,* 359 N.W.2d 500, 504 (Iowa App.1984). Each parent's ability to contribute must be determined using the child support guidelines adopted by the Iowa Supreme Court.

*See In re Marriage of Powell,* 474 N.W.2d 531, 533 (Iowa 1991). There is a rebuttable presumption the amount of child support which would result from the application of the guidelines is correct. *Id.* The guidelines state the following with regard to setting child support for noncustodial parents with a net monthly income of over $3,000:

In this range the appropriate figure is deemed to be within the sound discretion of the court or the agency fixing support by administrative order. The amount of support payable by a non-custodial parent with a monthly net income of $3,001 or more shall be no less than the dollar amount as provided for in the guidelines for a non-custodial parent with a monthly net income of $3,000.

*See In re Marriage of Lalone,* 469 N.W.2d 695, 696 (Iowa 1991).

Using the guidelines, a noncustodial parent with $3,000 monthly net income would be required to pay thirty-five percent for two children when the custodial parent has a monthly net income of $300–$400. Under the guidelines, Wilbur would be required to pay a minimum of $1,050 per month in child support for two children. Under the decree, Wilbur is required to pay $1,500 per month in child support.

The decree additionally provided that child support would continue "as long as the criteria of Chapter 598.1(2) are met."

Iowa Code section 598.1(2) provides in pertinent part:

"Support" or "support payments" means an amount which the court may require either of the parties to pay under a ... final judgment or decree, and may include alimony, child support, maintenance, and any other term used to describe these obligations.... **The obligations may include support for a child who is between the ages of eighteen and twenty-two years who is regularly attending an accredited school in pursuance of a course of study leading to a high school diploma or its equivalent,**

or regularly attending a course of vocational-technical training either as a part of regular school program or under special arrangements adapted to the individual person's needs; or is, in good faith, a full-time student in a college, university, or community college; or has been accepted for admission to a college, university, or community college and the next regular term has not yet begun....

Iowa Code § 598.1(2) (1991) (emphasis added).

We are unable to determine the district court abused its discretion or misapplied the guidelines in computing Wilbur's child support obligation. However, we have previously determined the child support guidelines are not applicable to determine support for an unmarried adult child under twenty-two years of age who is a student. *In re Marriage of Lindberg*, 462 N.W.2d 698, 701 (Iowa App.1990). A parent's responsibility for a child's support past the age of eighteen is generally based on the amount of the child's education expenses and is often limited to the cost of attending a state supported university in the state of the student's residence. *See In re Marriage of Richards*, 439 N.W.2d 876, 880 (Iowa App.1989). Therefore, we modify this portion of the dissolution decree to provide that Wilbur shall pay child support in the amount determined and continuing until each child reaches age eighteen, dies, marries, completes high school, or becomes self-supporting. The amount of child support shall be adjusted in accordance with the mandated guidelines as each child no longer qualifies for support. The question of the amount of child support if and when a child qualifies under section 598.1(2) shall be determined at that time. Except as we have modified, we otherwise affirm the district court.

### III. *Attorney Fees.*

Dixie argues the district court erred in failing to order Wilbur to pay her attorney fees at the trial court level. She also asserts Wilbur should be ordered to pay an appropriate amount of her appellate attorney fees. We disagree.

Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa App.1982).

An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App. 1981).

We are unable to conclude the district court abused its discretion in ordering each party to pay his or her own attorney fees. We affirm the district court. The parties shall each pay his or her own attorney fees on appeal.

Costs of this appeal are to be divided evenly between the parties.

AFFIRMED AS MODIFIED.

DONIELSON, J., concurs.

OXBERGER, C.J., dissents.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent. I would increase the alimony award to Dixie. I would award Dixie attorney fees for both the trial and appellate representation. Wilbur earns at least $150,000 a year. Dixie, dur-

ing the twenty-year marriage, only worked occasionally part-time outside the home, and now is paid $5.50 per hour for part-time employment.