In re the MARRIAGE OF Jil Michelle FYNAARDT and Eugene Bruce Fynaardt.

Upon the Petition of Jil Michelle Fynaardt, Petitioner–Appellee/Cross–Appellant,

And Concerning Eugene Bruce Fynaardt, Respondent–Appellant/Cross–Appellee.

No. 95–409.

Court of Appeals of Iowa.

Feb. 2, 1996.

Robert K. Clements, of the Clements Law Firm, Oskaloosa, for appellant.

R.E. Breckenridge, of Johnson, Hester, Walter & Harrison, L.L.P., Ottumwa, for appellee.

Considered by HAYDEN, P.J., and CADY and HUITINK, JJ.

CADY, Judge.

This case requires us to decide the difficult issue of child custody. Eugene (Gene) appeals and Jil Fynaardt cross-appeals child custody and various economic provisions of their dissolution decree. We affirm in part, modify in part and remand.

Gene and Jil Fynaardt married in December 1977. The marriage produced two daughters. Brook was born on March 20, 1980 and Paige on September 15, 1988. Both Jil and Gene appeared to be loving, nurturing, caring parents during their time together.

Jil worked outside the home throughout the marriage while also assuming the majority of the children's care. She was employed by J.S. Stafford insurance agency, worked for Estal & Associates, C.P.A.'s during the tax seasons, and towards the end of the marriage worked for H & R Block. At the beginning of their marriage, Gene worked in the construction business, did machine work, and also farmed. Gene continued to farm throughout the marriage and also worked various part time jobs, including short-run work as a truck driver for Oskaloosa Feed & Grain and contract work with a hog confinement operation.

Jil began experiencing physical problems with her thyroid in the fall of 1993, which

required several tests and surgeries to correct. Around the same time, she became involved in an initially platonic relationship with Gene's friend, Dennis Veldhuizen. Their relationship grew. In November 1993, Jil confided in Brook about her new relationship, that she loved Dennis, and that Brook should be happy because she was happy.

Approximately one week later, Jil informed Gene of her new relationship. She later told the rest of her family she was involved with another man and was leaving Gene. Brook asked her mother to choose between her and Dennis. Distraught over her mother's decision to stay with her boyfriend, Brook moved in with her grandmother and had little to no contact with Jil. Several of Jil's close relatives, including her mother and sister, have also not had any contact with Jil as a result of her actions.

In January 1994, Jil moved out of the family home with Paige into an apartment. Brook then returned home to live with her father. Jil filed for dissolution and sought temporary custody. The court initially designated Jil as the girl's primary physical custodian, yet altered its decision after a discussion in chambers, allowing Gene to be Brook's custodian. The court also ordered a home study conducted in order for recommendations to be made concerning custody and visitation.

An extensive home study was conducted of both Jil and Gene's homes. It ultimately recommended both girls be placed together under the physical care of Gene. The court, at a second temporary custody hearing in July 1994, designating Gene as the primary physical care giver of both Brook and Paige with liberal visitation to Jil. Brook, however, refused any contact with her mother and Jil avoided visitation with Brook. During the course of the separation, Gene continued his work with the hog confinement operation and his farming, with only two overnight trucking runs. Jil obtained a full time job at Anderson & Larkin, a C.P.A. firm and later at the law offices of Lance Grotewold. Jil and Gene still live in close proximity to one another.

In January 1995, following an extensive four-day trial with numerous witnesses, the district court ordered split custody of the girls. Gene was granted primary physical care over Brook and Jil was granted primary physical care over Paige. The decree further awarded Gene the farming assets and a portion of the accompanying debts. Jil was required to assume a debt of $2240 to her mother and the MasterCard bill amounting to $3497. No alimony or attorney fees was awarded. The decree also provided Gene continue his medical coverage of Brook and Paige, with unreimbursed expenses from Brook to be split between Gene and Jil and unreimbursed expenses from Paige to be paid by Jil. The decree granted Gene liberal visitation of Paige, yet ordered no visitation between Jil and Brook. The trial court, however, encouraged Brook to continue her counseling.

Gene appeals seeking primary physical care of both Brook and Paige. Jil cross-appeals contending the trial court improperly divided assets and liabilities, erred in failing to award alimony and attorney fees, improperly divided unreimbursed medical expenses, and failed to order counseling or visitation between Brook and her.

## I. Standard of Review

█ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

## II. Physical Care of Brook and Paige

█ In child custody cases, the best interests of the child is the first and governing consideration. Our governing consideration is the long-term best interests of the child. *In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child. Gender is irrelevant in a custody determination, and neither parent should have a great-

er burden than the other in attempting to gain custody. *In re Marriage of Ullerich,* 367 N.W.2d 297, 299 (Iowa App.1985).

■ Split physical care refers to the separation of children between parents. *In re Marriage of Will,* 489 N.W.2d 394, 397 (Iowa 1992). Such a separation should only be allowed in rare cases. *Id.* Our courts disfavor split custody of siblings. Splitting up siblings among custodial parents

> deprives children of the benefit of constant association with each other. As innocent victims of marital bankruptcy, they should not be denied this benefit except when their best interests require it.

*In re Marriage of Wahl,* 246 N.W.2d 268, 270 (Iowa 1976). *See In re Marriage of Jones,* 309 N.W.2d 457, 461 (Iowa 1981); *In re Marriage of Grandinetti,* 342 N.W.2d 876 (Iowa 1983). A child's express preference, while not controlling, is entitled to consideration in matters of custody. *Jones,* 309 N.W.2d at 461 (Iowa 1981).

■ Here, the record clearly indicates Gene is a hard worker and devoted father to his two children. The trial court noted Gene possessed a "strong moral character." He as well has demonstrated his skillful parenting abilities and is able to provide for both Paige and Brook's needs.

Paige and Brook share a strong bond with their father. Unfortunately, the same cannot be said for their mother. Jil's relationship with Dennis and the manner in which she dealt with the situation after Brook asked her to make a choice has devastated Brook. Brook and Jil rarely see or communicate with each other, largely due to Brook's resentment and disappointment in her mother. Jil does not seek any change in custody concerning Brook. On the other hand, Paige and Jil share a close bond and Jil has provided well for her daughter's needs. However, Paige and Brook also share an unusually strong bond with each other.[1] Brook assumed a great deal of responsibility with Paige's child care and the two girls shared a room until their parent's breakup.

The trial court resorted to split custody in this case for primarily three reasons. First, the trial court noted this case was unusual because of the strong interest Jil's family, particularly her sister and mother, in the divorce. The trial court observed Jil's family expressed hostility toward Jil for breaking up her marriage and may have influenced Gene and Brook's attitudes against peacefully resolving the dissolution. We encourage parents to cooperate in visitation and custody issues. *In re Marriage of Ruden,* 509 N.W.2d 494, 496 (Iowa App.1993). However, the influence of Jil's family members does not provide sufficient reason to deviate from our court's reluctance to split siblings.

■ Second, the court observed Paige, due to her young age, had "an emotional need that her mother would better supply." It did not articulate how Jil was better able than Gene to care for Paige's needs. Rather, it acknowledged Gene's strong parenting skills and devotion to his children. However, we "no longer infer the best interests of children of tender years are better served by awarding custody to their mother." *In re Marriage of Stom,* 226 N.W.2d 797, 799 (Iowa 1975). Gene has adequately proven his abilities to care for Paige.

Finally, the trial court ordered split custody because it felt the family would have a better opportunity for reunification if Paige resided with Jil, since Gene and Brook may unconsciously or consciously attempt to undermine Jil and Paige's relationship if Paige resided with them. While we also remain concerned with Brook's strong aversion to her mother, we note Gene has encouraged both Paige and Brook's relationship with Jil.[2]

---

1. Split custody was allowed in *In re Marriage of Kurth,* 438 N.W.2d 852 (Iowa App.1989) where one son was ten years old and the other seventeen years old. This court noted in *Kurth* the older son would likely be moving out of the home shortly and the likelihood of their living in the same household is remote. Here, however, Brook is only fifteen years old and will remain in the household for at least another three years. In light of the strong bond between the girls, we find the difference in their ages does not make an appreciable difference in our determination.

2. Gene has encouraged and told Brook she should call or visit Jil and refrains from making disparaging remarks about Jil in front of Brook and Paige. Gene likewise has never discouraged Paige from calling or seeing her mother. Testi-

Moreover, Gene will also foster greater relationships between Paige, Brook and other relatives. *See In re Marriage of Toedter,* 473 N.W.2d 233 (Iowa App.1991) (both parents loved children, but father would provide a more stable home and continuous contact with grandparents and other relatives).

We do not find Gene and Jil's situation to be so rare to require a deviation of the strong policy of our courts to avoid splitting custody of the children.[3] Clearly, Brook's preference is to remain with her father, who has shown to be an exceptional care giver. Instead, we find awarding Gene primary physical care of both Brook and Paige and not requiring the girls to be separated to be in their best interests. As such, we modify the decree to award Gene primary physical care of his two daughters. We also modify the decree to grant Jil the liberal and continuing right of visitation for Paige which was granted Gene as set forth in the decree.

The partners to a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell,* 473 N.W.2d 244, 246 (Iowa App.1991). An equal division or percentage distribution is not required, but parties are entitled to only what is fair and equitable in each circumstance. *Id.* We consider the criteria codified in Iowa Code section 598.21(1) (1993) in distributing property equitably. *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

Here, Gene and Jil accumulated a great deal of debt during the course of their marriage. Gene was awarded the farmland, farm equipment, the hog buildings, and other items valued together at $210,627 and was required to assume other debts including liabilities associated with the farm, amounting to $286,570. The decree awarded Jil her car, checking accounts, valued at $5375, and required her to assume $9281 in debts. Gene leaves the marriage with a net loss of $75,943 and Jil leaves with a significantly lower net

loss of $3906. Gene, however, acquires income producing assets which offsets his greater accumulation of the debt. We find the property distribution by the trial court to be fair and equitable.

### III. Alimony

Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener,* 247 N.W.2d 219, 220 (Iowa 1976). In determining the appropriateness of alimony, the court must consider "(1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against relative needs of the other." *In re Marriage of Estlund,* 344 N.W.2d 276, 281 (Iowa App.1983) (citation omitted).

Gene's approximate monthly gross income is $3100. Jil's net wages indicate monthly income of approximately $800. Jil has worked extensively throughout the marriage and is capable of providing a living for herself. She has obtained skills in the area of tax preparation and was able to obtain full-time employment following the divorce. We also consider the large portion of the marital debt assumed by Gene. In light of Gene's greater debt assumption and Jil's employment history and earning capacity, we find an award of alimony is not justified in this case. *See In re Marriage of Dahl,* 418 N.W.2d 358, 359 (Iowa App.1987) (evaluate property distribution and alimony together to determine their sufficiency).

### IV. Attorney Fees

Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles,* 338 N.W.2d 544, 546 (Iowa App.1983). Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson,* 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage*

mony, however, indicated Jil had yelled at Gene in front of Paige at her school, yelled several times at Brook, and does not acknowledge Brook when she comes to pick up Paige. Jil's actions indicate Jil's lack of sensitivity to the emotional needs of her daughters.

3. We recognize the trial court faced an extremely difficult task in determining custody in this case, as evidenced by a four-day trial which included over thirty witnesses, a highly voluminous record, and a well thought-out, detailed decision.

*of Lattig,* 318 N.W.2d 811, 817 (Iowa App. 1982).

 The trial court thoroughly considered the parties' respective abilities to pay attorney fees, noting while Gene has the greater income, he assumed a great deal of debt and will have difficulty in paying his own fees. We find no error in requiring each party to pay their own attorney fees. We also reject Jil's application for appellate attorney fees.

### V. Medical Expenses

 We recognize a parent's obligation to support their children should be determined in light of each parent's ability to contribute. *In re Marriage of Erickson,* 491 N.W.2d 799, 803 (Iowa App.1992). Here, Jil assumes the full burden of Paige's unreimbursed medical expenses and one-half of Brook's unreimbursed medical expenses with Gene assuming the other half. We find this to be inequitable and modify the decree to provide for Jil and Gene each to assume one-half of the unreimbursed expenses for both Paige and Brook.

### VI. Counseling and Visitation

 This case sadly illuminates the difficult emotional problems faced by parents and children of divorce. Here, a mother and daughter's relationship has deteriorated to the extent they no longer communicate with each other. Prior to the separation, their relationship was strong and healthy. The trial court ordered no visitation between Jil and Brook yet urged the parties to continue to seek counseling for their problems. We agree with the trial court the situation between them would likely worsen if visitation was forced upon Brook. On the other hand, the divorce should not be finalized without providing visitation rights to Jil. We consider the desires of a child in fixing visitation, but will not permit those desires to control. We recognize a child's interest in knowing and interacting with both parents, just as we understand the importance of a parent-child relationship in the development of a child. *See In re Marriage of Ruden,* 509 N.W.2d 496.

We grant Jil visitation rights of Brook, but order Jil and Brook to attend counseling before ordering specific visitation terms. *See In re Marriage of Russell* 479 N.W.2d 592, 596 (Iowa App.1991). We remand the case for the district court to determine the specific provisions of the counseling, as well as the future terms of visitation. We also remand to determine child support. Brook should be provided counsel to provide for her interests at the remand hearing. *See* Iowa Code 598.12 (1993).

**AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.**