# IN THE COURT OF APPEALS OF IOWA

No. 20-0367
Filed January 21, 2021

IN RE THE MARRIAGE OF MARY HIGHT
AND JUSTIN HIGHT

Upon the Petition of
MARY HIGHT,
Petitioner-Appellee,

And Concerning
JUSTIN HIGHT,
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Marlita A. Greve,

Judge.

A husband appeals from a dissolution decree and challenges the district

court's award of physical care and visitation concerning the parties' three children.

**AFFIRMED.**

Robert S. Gallagher and Peter G. Gierut of Gallagher, Millage & Gallagher,

P.L.C., Bettendorf, for appellant.

Arthur Buzzell, Bettendorf, for appellee.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**SCHUMACHER, Judge.**

## I.    Background Facts & Prior Proceedings.

Justin and Mary Hight were married in May 2014.  They have three young daughters, born in 2014, 2016, and 2017.  At the beginning of their marriage, the couple lived in a home purchased by Mary's father and grandmother in the Quad Cities.  Justin worked full-time as a security guard and Mary worked various part-time jobs.  However, Mary primarily stayed home to raise the parties' three children.  She was the primary caregiver of the children until August 2, 2017, the date of the parties' separation.

On August 2, an argument ensued between Justin and Mary concerning Justin selling a computer tablet without Mary's consent.  Both parties testified to the events of that day at trial and gave varying versions.  In the dissolution proceedings, the trial court found Mary to be credible in determining the following facts.  Justin chased after Mary, grabbed her, and slammed her to the ground, causing her to hit the side of her arm and the back of her head on the sidewalk.  Justin got on top of Mary, put his hands around her neck, and began choking her.  Mary clawed and scratched Justin to get him to stop choking her.  Unable to breathe, Mary stopped scratching and Justin relented.  Justin walked away from the scene.  Both parties called the police to report what occurred.

On his initial call to the police, Justin stated he was calling to report himself.  He admitted he was at fault and had held Mary down by the throat.  However, when police arrived, Justin told responding officers that Mary was the aggressor and he displayed the scratches Mary caused on his arms.  Mary did not have any visible

injuries and admitted to scratching Justin but explained it was to stop him from choking her.

Mary was charged with domestic abuse assault and a criminal no-contact order in Justin's favor was entered against Mary.[1]  Mary's criminal charge and the related no contact order were later dismissed by the State without disposition.  On August 7, Justin filed a petition for relief from domestic abuse against Mary, and the court entered a civil order of protection.[2]  On August 16, 2017, Mary filed a petition for dissolution of marriage.  On August 29, the court held a contested hearing on the petition for relief from domestic abuse.  Justin, as well as the couple's then-roommate, testified at trial.  On the advice of her attorney, Mary did not testify.  The court found Mary had committed a domestic assault against Justin and granted Justin temporary custody of the children.[3]

The parties' relationship continued to deteriorate.  Both parties point to specific actions of the other during this time to support their claims for physical care of the children.  The additional facts relevant to our analysis are set out below.  On January 19, 2018, the parties entered a stipulated temporary custody and visitation agreement wherein Justin would have temporary physical placement of the children subject to Mary's visitation rights every other weekend and during the

---

[1] In the dissolution proceeding, the district court found Mary more credible in her testimony related to the August incident and characterized the events as "questionable, at best, charges of domestic violence."  The district court noted that in responding to domestic abuse incidents, law enforcement officers often charge the party who does not show signs of injury and was convinced this was the case here.

[2] Justin does not raise an issue of res judicata on appeal, and as such, we do not consider the same.

[3] The civil protective order expired on August 29, 2018.

times Justin was at work. In February, a custody evaluation commenced; however, it was never completed, as Mary was unable to make some of the final payments.

Over two years after the hearing on the petition for relief from domestic abuse, final trial on the dissolution petition was held on December 17 and 18, 2019. The district court entered its decree on January 21, 2020, and awarded the parties joint legal custody of the children, found joint physical custody was not appropriate, and awarded physical care of the children to Mary, subject to visitation rights of Justin. Justin filed a motion to amend and enlarge that included the arguments he now raises on appeal. The district court denied the motion in its entirety. On appeal, Justin takes issue only with the court's determination of physical care and the summer visitation schedule. He argues he can provide superior care for the children. Alternatively, he seeks additional visitation, specifically, that his summer visitation be increased from three weeks to eight weeks.

## II.  Discussion.

### A.  Standard of Review.

We review dissolution appeals de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018).

### B.  Physical Care.

In determining physical care, the overriding concern is always the best interests of the child. *See* Iowa Code § 598.41(5)(a) (2019). "The objective of a physical care determination is to place the children in the environment most likely

to bring them to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695–96. In making a physical care determination, we consider the factors articulated by the legislature in Iowa Code section 598.41(3)[4] as well as other facts and circumstances relevant to the best interests of the child. *See id.*; *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974) (explaining the determinative factor for an award of physical care is "which parent can minister more effectively to the long-range best interests of the children." (citations omitted)). "In deciding the custody issue, we seek neither to punish one parent nor reward the other." *In re Marriage of Sparks*, 323 N.W.2d 264, 266 (Iowa Ct. App. 1982) (citing *In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973)). "There is no inference favoring one parent as opposed to the other in deciding which is the more fit custodian except that arising from the particular facts of the case." *Id.* (citing *In re Marriage of Bowen*, 219 N.W.2d 683, 687–88 (Iowa 1974)).

Justin does not dispute the district court's finding that joint physical care is not in the children's best interests. "When joint physical care is not warranted, the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007) (citing Iowa Code § 598.41(1)(a), (5)). After considering the evidence and testimony presented at trial, the district court determined it was in the best interests of the children to award physical care to Mary. We agree.

---

[4] The section 598.41(3) factors include the suitability of the parents, whether the psychological and emotional needs of the child will suffer from lack of contact with both parents, parental communication, the previous pattern of caregiving, each parent's support of the other, wishes of the child, agreement of the parents, geographic proximity, and safety.

There is no doubt that both parents love their three daughters. However, the record demonstrates that Mary is the more suitable and capable parent to minister to the long-range best interests of the children. Mary will provide a stable home for the children and has demonstrated an ability to appropriately care for the children. She was the primary caregiver of the children until the incident on August 2. The allegations of domestic abuse by Justin were described by the district court as "questionable at best." Additionally, the court, with an opportunity to observe the witnesses, found Justin's credibility particularly suspect. Submitted correspondence between the parties indicate Mary's desire and willingness to be involved in the children's lives. She has stable employment that allows her to be home with the children during the day. Mary is able to provide a home with ample living space and has a strong support system of extended family in the area.

The environment Justin could provide the children is less conducive to their long-term interests. While in Justin's care, the children contracted head lice on two occasions and one of the children experienced severe diaper rash. Justin's employment requires that the children be in daycare for much of the week. He rents a home with limited space and all three children share one bedroom that is very cramped. Justin acknowledges that he suffers from various mental-health issues, including post-traumatic stress disorder, anxiety, and past suicidal ideation. He does not have family in the area and lacks the same robust support system that Mary can offer the children. Justin has one other child from a previous relationship who has been adopted by family and he has no contact with that child.

Justin has not demonstrated a willingness to reconcile his relationship with Mary despite the importance of the children having parents who maintain a healthy

relationship. The district court found this particularly concerning, stating, "The court has only had a few cases where a parent showed as much animosity towards the mother of his children as Justin has against Mary." Justin failed to inform Mary of the children's doctor's visits on multiple occasions and he did not make her aware of the children's school activities and conferences. When Mary's work obligations conflicted with her scheduled visitations, Justin often was inflexible and unaccommodating. Justin has restricted Mary's access to the children and requested Mary's visitations be supervised despite Mary posing no threat to the children. The trial court noted,

> The children deserve to have a good, solid and loving relationship with their mother and their father. Mary has proved to the court she is willing and will foster a good relationship between the children and their father. To the contrary, Justin has proved to the court that he will eventually destroy any attempt at a good relationship between the children and their mother simply for revenge purposes. That is not in the children's best interest and is wholly unfair to the children.

We agree it is in the children's best interest for Mary to be awarded physical care of the children.

### C. Visitation.

Justin requests if he is not awarded physical care of the children, we modify the court's decree and increase his visitation rights. Specifically, Justin requests that we increase his summer visitation to eight weeks. The district court ordered Justin to have regular visitation with the children three weekends a month, from Friday until Sunday. The court also ordered Justin to receive three weeks of

visitation in the summertime, half of Christmas break, and alternating spring breaks.[5]

In establishing visitation rights, the governing principle is, as always, the best interests of the children. *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992). Liberal visitation rights are in the best interests of the children. *Id.* In determining the appropriate amount of visitation, a court should order visitation that will ensure the opportunity for maximum continuing physical and emotional contact with both parents. *See* Iowa Code §§ 598.41(1), .1(1).

At trial, Mary indicated if she received physical care of the children, it would be appropriate for Justin to receive eight weeks of visitation in the summer. Justin testified that if he were to receive physical care, the children should reside with him in the summer, with extra time to be determined between the parties. The court acknowledged Mary's "generous" visitation proposal, and adopted such in part.

However, the district court found it important that both parents spend meaningful time with the children during the summer and set Justin's summer visitation at three weeks. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95 (Iowa Ct. App. 1994) (recognizing "reasonable discretion of the trial court to determine visitation rights" and declining to "disturb its decision unless the record fairly shows it has failed to do equity"). The current schedule maximizes the children's

---

[5] The decree noted the court had deliberately not determined specific holiday visitation due to the lack of evidence presented at trial as to what holidays the parties observe and added it was the court's intent that the parties equitably split holiday visitation. The court further instructed the parties to present a holiday visitation schedule to the court if the parties desired a court-ordered schedule.

opportunity to enjoy time with both parents.[6]  In addition to the three weeks of summer vacation, Justin continues to have the children three weekends a month during the summer.  We see no failure to do equity.  We find the summer visitation set by the district court to be a reasonable allocation of time and in the best interests of the children, particularly in light of the court's division of the children's weekends.

### III.    Attorney Fees.

Finally, Mary asks this court to award her attorney fees on appeal.  Appellate attorney fees "are not a matter of right, but rather rest in this court's discretion."  *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013).  Our determination is based on "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993).  While Mary is the prevailing party on appeal, both parties have similar incomes and obligations.  Justin is not in a financial position to pay attorney fees.  We decline to award appellate attorney fees in this matter.  Costs of the appeal, however, are assessed to Justin.

### IV.    Conclusion.

It is in the children's best interest that physical care be placed with the mother and we decline to disturb the district court's allocation of summer visitation rights.  We decline to award Mary appellate attorney fees.

**AFFIRMED.**

---

[6] The record is void of the amount of summer vacation available for school-aged children where Mary now resides.